EDWARD J. BURNS, Plaintiff-Appellee, v. HOWELL TRACTOR & EQUIPMENT COMPANY et al., Defendants and Counterclaimants-Appellants-Appellees.—(HOWELL TRACTOR & EQUIPMENT COMPANY, Third-Party Plaintiff-Appellant-Appellee, v. ROBERT R. ANDERSON COMPANY, Third-Party Defendant-Appellant-Appellee.)

First District (2nd Division)   Nos. 60372, 60465, 60608 cons.

Opinion filed January 11, 1977.—Rehearings denied March 10, 1977.

Schaffenegger & Watson, of Chicago, for appellant and appellant-appellee Cook County.

Cooney & Stenn, of Chicago, for appellee Edward J. Burns.

William D. Maddux, Ltd., and Kirkland & Ellis, both of Chicago, for appellant-appellee Howell Tractor & Equipment Company.

Crooks, Gilligan & Kages, of Chicago, for appellant-appellee Robert R. Anderson Company.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

On June 18, 1967, plaintiff, Edward J. Burns, was injured when the vibratory roller he was operating on a Cook County road construction jobsite overturned. This lawsuit was commenced by plaintiff to recover damages for the serious injuries sustained by him as a result of that accident. The complaint contained two counts, both sounding in negligence. Named as defendant in count I of the complaint was Howell Tractor & Equipment Company (hereinafter referred to as "Howell"), the company which had leased the equipment plaintiff was operating at the time of the accident. Joined as defendants in count II were Cook County and its superintendent of the department of highways (hereinafter, these defendants will be collectively referred to as "Cook County").

Howell filed a third-party complaint against plaintiff's employer on the project, Robert R. Anderson Company (hereinafter referred to as "Anderson"). Anderson responded by filing a counterclaim against Howell. Also, Howell and Cook County filed cross-complaints against each other. All allegations asserted in the various pleadings filed in this cause were premised upon a claim of negligence, and all cross-claims and third-party actions were sent to the jury upon a theory of active-passive negligence.

The jury returned a general verdict in favor of plaintiff as against all

defendants and awarded damages to plaintiff in the amount of $300,000. The jury also returned a general verdict in favor of Howell in its actions against Cook County and Anderson. By its answers to special interrogatories, the jury concluded that plaintiff was free from contributory negligence at the time of the accident; that the reverse mechanism on the machine plaintiff was operating was defective immediately before and at the time of the occurrence in a manner such that the defect contributed to the proximate cause of plaintiff's injuries; and that Howell was guilty of active negligence immediately before and at the time of the occurrence. The trial court entered judgment on the verdict in favor of plaintiff against both Howell and Cook County. However, judgment was not entered on the general verdict in favor of Howell, and no recovery was granted by the court to either Howell or Cook County on the actions filed by them.

Numerous post-trial motions were filed by Howell, Cook County and Anderson, including Cook County's motion for leave to amend its cross-claim against Howell to add one count predicated upon a theory of strict liability in order to conform its pleadings to the proof adduced at trial. Without specifically enumerating the court's rulings on each of these motions, the effect of these rulings can be summarized as follows: judgment in favor of plaintiff against defendants was left intact, and all other motions were denied except for the motions requesting a new trial as between Howell, Cook County and Anderson so that the question of their respective liabilities to plaintiff could be resolved.

On appeal, Howell contends that judgment should be entered on the general verdict in its favor against Cook County and Anderson, and that the order granting a new trial on such claims should be vacated. Howell does not appeal from the judgment entered against it and in favor of plaintiff. Cook County contends that it should be granted judgment notwithstanding the verdict in favor of plaintiff since first, the evidence establishes that Cook County was free from negligence, and second, Cook County hired an independent contractor, Anderson, who performed the work and leased the machine in question. In the alternative, Cook County maintains that it should be granted a new trial on the question of its liability to plaintiff due to alleged improper arguments by counsel for plaintiff and Howell. Cook County also contends that judgment should be entered in its favor on both its cross-complaint against Howell and on Howell's cross-complaint against Cook County. Anderson urges the ruling of the trial court granting a new trial be set aside and that judgment should be entered in favor of Anderson on its counterclaim against Howell. It is Anderson's position that the jury's answer to the special interrogatory finding Howell guilty of active negligence should be controlling over the jury's inconsistent general verdict in favor of Howell.

Before considering the evidence adduced at trial, closer attention must be given to the pleadings filed in this matter. By his amended complaint, plaintiff alleged that Howell negligently and carelessly failed to (1) lease safe and adequate machinery, (2) properly inspect and maintain said machinery, and (3) warn of any dangerous conditions accruing to the continued use of said machinery. Cook County was charged with negligently and carelessly (1) allowing a dangerous condition to develop and to continue in the area where plaintiff was working at the time of the accident, (2) allowing plaintiff to use dangerous and improper equipment, (3) maintaining and inspecting said equipment and supervising the use thereof, and (4) failing to warn plaintiff of the dangerous condition which existed.

By its third-party action against Anderson, Howell alleged that its negligence, if any, was passive in comparison to the conduct of Anderson because Anderson leased the equipment and utilized said equipment in a manner which was not intended for that type of machinery and which was dangerous and unreasonable. In its counterclaim against Howell, Anderson alleged that the leased equipment was defective and unsafe at the time Anderson leased it from Howell and that Howell failed to properly maintain the equipment and to warn of any risks in the continued use of said equipment.

Cook County's cross-complaint against Howell asserted similar allegations as were contained in Anderson's counterclaim against Howell. Howell's cross-complaint against Cook County basically reiterated the allegations advanced in plaintiff's complaint against Cook County. Both of these pleadings sought relief upon a theory of passive negligence.

The evidence discloses that Cook County was engaged in a road resurfacing project in Palatine, Illinois, on the date of the accident. Cook County employed Anthony Fasco as the resident engineer in charge of the project. Fasco had a trailer-office at the jobsite and was responsible for conforming the work performed with the applicable construction specifications. To this end, he was authorized to make any decision he deemed appropriate regarding the type of equipment and materials used on the job and the construction techniques employed. Anderson was hired by Cook County to perform the desired work, and Anderson's foreman, Clifford Schrader, supervised the construction activities.

Before resurfacing the road, the existing asphalt surface was broken up by using heavy road construction equipment. Anderson made the decision, which was acquiesced in by Cook County, to use the broken up asphalt as fill to form the subbase for the new surface. Consequently, the broken up asphalt was to be compacted in order to provide a sufficiently solid foundation.

Plaintiff was hired by Anderson as a machine operator some 4 or 5 days prior to the accident. Although plaintiff had experience in operating

certain types of road construction equipment, he was unfamiliar with the operation of a vibratory roller, the machine he was assigned by Schrader to operate. Schrader demonstrated to plaintiff the proper procedure for operating the roller, a technique which plaintiff had little difficulty in acquiring.

The vibratory roller in question had a large circular drum on the front of the vehicle. A vibrating mechanism attached to the drum enabled the roller to produce the results of a 10-ton roller even though this particular model weighed only 5 tons. The roller was designed for use in compacting various surface materials and in finishing flat surfaces. By manipulating a single control lever in conjunction with a brake pedal, the speed and direction of the machine could be regulated. The control lever slid along a slot in the shifting mechanism. When the lever was pushed forward, the roller would travel in that direction. Reverse was accomplished by pulling the lever to the rear. A notch in the middle of the slot indicated the neutral gear position. Proper operation of the roller required that the machine be brought to a standstill in neutral before shifting from forward to reverse, or vice-versa. When in operation the roller would travel at approximately 1-2 m.p.h.

Plaintiff initially operated the roller without difficulty on a surface of soft clay. Two days before the accident, the reverse mechanism became inoperative. After reporting this situation to the foreman, plaintiff was advised to make wide turns onto the shoulder of the roadway in order to change the direction of the roller. The following day, a repairman from Howell came to the jobsite and repaired the machine. It was discovered that the forward and reverse cable had loosened and that two nuts required tightening. After 10-15 minutes, the necessary repairs had been made and the roller appeared to be functioning properly. The repairman considered the need for this type of repair as uncommon and probably caused by vibration. After tightening the nuts, he thought the shifting mechanism would remain intact indefinitely.

On the date of the accident, the foreman told plaintiff to commence working in another area of the project. At this new location, the old asphalt surface had been broken up, and plaintiff was instructed to drive the roller over the asphalt chunks in order to further break up and compact the pieces to form a suitable subbase.

Testimony was elicited concerning the approximate size of the asphalt chunks varied. The foreman recalled seeing chunks 1-2 inches thick and 2-10 inches in circumference. The resident engineer testified that the pieces were about 14-16 inches in circumference. Plaintiff testified that some chunks were over 2 feet in circumference.

When plaintiff began rolling over the asphalt, the roller started to tilt and bounce due to the size of the chunks. Another Anderson employee testified that plaintiff " * * * came on the asphalt with the machine and

he was bobbing around like a cork in water and I suggested that he get off because he wasn't doing any good." Plaintiff became frightened and followed his colleague's advice. Plaintiff reported the situation to the foreman, and the foreman ordered gravel spread over the asphalt to create a smoother surface. Later that day after gravel had been poured over an area approximately 15-25 yards long and 8-9 feet wide, plaintiff resumed rolling over the surface. In some areas, the gravel was 6 inches deep. Because the engine was mounted on the front of the machine in a manner which partially obstructed plaintiff's view, plaintiff had to look along the side of the roller in order to steer the machine within the gravelled area. Guide stakes marking the side of the roadway had previously been knocked down by other equipment, but one could still see the edge of the road.

The accident occurred as plaintiff approached the end of the gravelled area where the gravel "feathered down" or tapered off, leaving asphalt chunks protruding through the diminishing layer of gravel. During his testimony, plaintiff described the accident as follows:

"Then I was proceeding along and suddenly I hit a few big chunks of this asphalt that was not completely covered with the stone. The front drum—it tilted the drum and threw it abruptly to the right, and it sort of threw me up out of the seat. I stood up. The back end started to follow it around.

I hit a couple more big chunks of asphalt and my machine started to tilt to the side and I grabbed the reverse to pull it into reverse, but the fact was that the engine started to tilt so far it started to go over. So I jumped off the machine.

Q. Why did you try to pull it in reverse?

A. Well, because I wanted to save the machine from going over, and it was the fastest possible means I knew to get it to back up and stop going forward.

\* \* \*

Well, I was thrown, basically. It started to tilt and it started to go over, and by that time, the only thing I could do was to try to jump away from it as best as I could."

Unfortunately, the roller toppled over and pinned plaintiff to the ground.

Plaintiff also testified that just prior to the accident, the braking and reverse mechanisms on the machine seemed to be functioning properly. Once the machine reached the feathered down portion of the gravel, it started bouncing and rocking in the same manner as it did before the gravel was poured.

The foreman and another employee went to plaintiff's aid, and they observed that a pin was missing from the roller. The foreman did not know the function of the pin, but the employee testified that the pin was necessary in order for the shifting mechanism to operate properly. A

photograph introduced into evidence by Howell showed the roller after the accident, and the control lever was in the forward position.

The resident engineer testified that Anderson decided what materials would be used as fill and what type of machinery would be used for compacting. Since the witness considered asphalt to be suitable material for fill and the contract specifications did not provide otherwise, he did not halt plaintiff's operations over the asphalt chunks. He recalled seeing chunks 14-16 inches in circumference, but he later testified that materials such as bricks should not be used as fill because they are too big.

The foreman testified that the lightweight roller used by plaintiff is adequate for compacting pieces of asphalt. Another Anderson employee testified that the roller in question was too light for the job it was required to perform on the date of the accident. It was his opinion that a machine called a sheepsfoot should have been used since it has spikes on its drum which further break up the asphalt during compaction.

Other evidence was adduced regarding advertising brochures distributed by Howell. Cook County and Anderson argued to the jury that the general language contained in this literature with respect to the versatility of this particular model of vibratory roller indicated that the machine was being used in a proper manner on the date of the accident. Howell refuted this argument, and no evidence was introduced establishing that these brochures were read by any of the parties prior to the accident.

At the close of evidence, Anderson's counterclaim against Howell on a strict liability theory was stricken for a lack of proof. No appeal was taken from this ruling.

■■■ The threshold question in this appeal is what effect should be given to the answer of a special interrogatory finding Howell guilty of active negligence which is inconsistent with the general verdict returned by the jury in favor of Howell and against Cook County and Anderson. Section 65 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 65) provides that "When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may render judgment accordingly." Judicial interpretation of this section has established that an inconsistency of this nature exists when the special findings are clearly and absolutely irreconcilable with the general verdict. (*Cohen v. Sager* (1971), 2 Ill. App. 3d 1018, 278 N.E.2d 453.) The underlying rationale of this rule is that a jury is presumed to more fully understand a particularized special issue on which its attention has been focused rather than a composite of all of the questions in the case. (*Borries v. Z. Frank, Inc.* (1967), 37 Ill. 2d 263, 226 N.E.2d 16.) However, there is no corresponding statutory authority empowering the trial court to enter judgment on the general verdict if it determines that the special finding is without substantial evidentiary support. The applicable rules for setting

aside a special finding were stated in *Kirby v. Swedberg* (1969), 117 Ill. App. 2d 217, 221, 253 N.E.2d 699, 701:

> "When the answer to the special interrogatory is inconsistent with the general verdict, the court may enter judgment on the general verdict only when there is a valid basis on which to set aside the answer to the special interrogatory. This may be done on an evidentiary basis under the same conditions that a general verdict may be set aside. Freeman v. Chicago Transit Authority, [33 Ill. 2d 103, 105-06, 210 N.E.2d 191].

> We believe that an answer to a special interrogatory should be set aside only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the party presenting the special interrogatory that no contrary answer to the interrogatory based on that evidence could ever stand. It is only in such case that it is proper to set aside the answer to the special interrogatory and enter a judgment on the general verdict nothwithstanding such answer. See: Pedrick v. Peoria & Eastern R. Co., 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967). If the answer to the special interrogatory is contrary to the manifest weight of the evidence, then a new trial should be ordered. [Citations.]"

In the instant case with respect to Howell, Cook County and Anderson, the trial court did not enter judgment on either the special findings or the general verdict in favor of Howell, although urged to do so. Rather, the court ordered a new trial to determine the respective liabilities of these parties. No indication is contained in the record as to why the court ruled in this manner. We must determine whether the trial court abused its discretion by not entering judgment on either the special findings or on the general verdict, but ordering a new trial instead. *Yocco v. Barris* (1973), 16 Ill. App. 3d 113, 305 N.E.2d 584.

■■ In light of the authorities set out above, we consider the rulings of the trial court to be proper. The jury returned a general verdict in favor of Howell on its claims against Cook County and Anderson. But the jury also returned an answer to a special interrogatory finding Howell guilty of active negligence. This special finding is clearly irreconcilable with the general verdict. Irrespective of section 65 of the Civil Practice Act, the court did not enter judgment on this special finding, presumably because it considered this finding to be without substantial evidentiary support.

It is now argued by Cook County and Anderson that the evidence adduced at trial amply supports this special finding. In this regard, our attention is directed to the fact that the shifting mechanism on the roller required repairs two days prior to the accident; that plaintiff attempted to shift the control lever into reverse as the roller veered out of control, but

was unable to prevent the accident; and that a pin was discovered missing from the shifting mechanism after the occurrence. But we consider this evidence, and inferences therefrom suggested by Cook County and Anderson, to be greatly overshadowed by evidence indicating that the roller functioned normally after repairs were made two days prior to the accident; that the braking and reverse mechanisms were operating properly immediately prior to the accident; that plaintiff's desperate attempt to shift the control lever into reverse came at a moment when plaintiff was bouncing out of his seat and contemplating jumping from the vehicle; and that a reasonable inference exists, as argued by Howell, that the missing pin was dislodged either when the roller overturned and slid down an embankment adjacent to the shoulder of the road, or when plaintiff attempted to shift gears while the roller was moving. Even if plaintiff had succeeded in shifting the control lever into reverse, it is mere speculation that such an endeavor could have significantly altered the momentum of a 5-ton machine in the midst of overturning. Moreover, notwithstanding arguments advanced by Cook County and Anderson that this particular type of vibratory roller is suitable for compacting asphalt chunks of the size plaintiff encountered on the day of the accident, it is uncontroverted that plaintiff experienced extreme difficulty whenever he attempted to operate the roller over the broken up asphalt surface where a sufficient layer of gravel had not been poured. This dangerous situation was created by the condition of the surface over which the roller was driven, not by a mechanical failure of the machine. Consequently, we conclude that the jury's special finding of active negligence on the part of Howell is contrary to the manifest weight of the evidence, and the trial court properly set this finding aside. Furthermore, the trial court correctly ordered a new trial, rather than enter judgment on the general verdict in favor of Howell, since the standard as announced in *Kirby* for taking the latter action was not satisfied in our estimation.

■■■ With respect to Cook County's contention that the trial court should have entered judgment in favor of Cook County notwithstanding the jury's verdict in favor of plaintiff, Cook County overlooks the control over the construction project it retained. According to the testimony of its resident engineer, Cook County could halt operations and remove equipment and materials from the jobsite if they failed to conform with contract specifications. Indeed, plaintiff charged Cook County with negligently failing to perform this obligation by acquiescing in the continued use by plaintiff of a vibratory roller to compact large pieces of asphalt. It was plaintiff's position at trial that either the roller or the asphalt, or both, were unsuitable for the use made of them by Anderson and Cook County. Irrespective of the fact that Cook County employed an independent contractor, Anderson, to complete the resurfacing

project, Cook County retained sufficient control of the project to be held accountable for injuries sustained during construction if it knew, or through the exercise of reasonable care should have known, that the work of Anderson was being performed in a dangerous manner, but it failed to correct such activities by exercising the power of control which it retained. (*Pasko v. Commonwealth Edison Co.* (1973), 14 Ill. App. 3d 481, 302 N.E.2d 642.) Contrary to Cook County's contention that it was free from negligence, the record contains sufficient evidence from which the jury could properly conclude that Cook County was aware of, and had an opportunity to correct, the dangerous condition which resulted in plaintiff's injuries. We will not disturb the judgment entered by the trial court on the jury's verdict in favor of plaintiff and against Cook County.

One other issue requires our attention. Cook County argues that plaintiff's counsel committed reversible error during his closing argument to the jury when he made certain comments concerning a special interrogatory. The pertinent statements are the following:

> "But under the law, certain special Interrogatories will be submitted to you. One of them has to do with us, and [plaintiff], particularly, and it says generally, 'Was [plaintiff] guilty of contributory negligence before and at the time of this injury which proximately caused his injury?'
>
> I say to you, you have to answer that Interrogatory 'No.' It is very, very important that you answer that Interrogatory 'No,' because [plaintiff] was exercising ordinary care at the time that an ordinary person would do. I say under the circumstances, with his experience, and his knowledge, and the particular situation, he was doing what the ordinary person would do. He is going along. He is looking down the side, and he didn't see that, and his injury was not caused by his fault, but it was caused by the fault of Cook County and Howell, who knew, or should have known that this piece of equipment would be used in this manner, and he wasn't warned about it. He wasn't told about it, and it was not his fault that he was hurt.
>
> But if you answer that Interrogatory any way than 'No,' then you are saying, 'It is his fault and he can't recover.'"

Plaintiff correctly states the rule that it is improper argument if counsel informs the jury of the source of a special interrogatory and if the purpose of a special interrogatory is defeated by counsel advising the jury to protect its verdict by conforming its answer to the special interrogatory with the verdict. (*Sommese v. Maling Bros.* (1966), 36 Ill. 2d 263, 222 N.E.2d 468.) But it is not improper for counsel to suggest to the jury how it should answer the special interrogatory as long as counsel does not caution the jury to conform its answer to its verdict. *Moore v. Checker Taxi Co.* (1971), 133 Ill. App. 2d 588, 273 N.E.2d 514.

■■ In the instant case, we find no error in counsel's argument to the jury. Counsel for plaintiff was merely arguing his view of the evidence to the jury and stating what answer to the special interrogatory would be consistent with this view. Counsel stopped short of impermissible argument by refraining to advise the jury of the legal significance of conforming its answer to its verdict and by not disclosing the source of this particular interrogatory.

Cook County also urges reversal due to alleged inflammatory comments during closing argument by counsel for both plaintiff and Howell. Cook County contends that the logical inference to be drawn from certain comments is that Cook County and Anderson were involved in a "kickback scheme." We do not share Cook County's extreme interpretation of these final arguments.

In view of the foregoing, we need not address other issues raised by the parties to this appeal. The judgment of the circuit court is hereby affirmed.

Judgment affirmed.

DOWNING and JIGANTI, JJ., concur.