Ralph R. Seaburg, Plaintiff-Appellant, v. LaMont Williams, Defendant-Appellee.

Gen. No. 11,083.

Second District, Second Division.
February 11, 1958.
Released for publication February 28, 1958.

Large, Reno, Zahm & Folgate (Ralph S. Zahm and Robert K. Skolrood, of counsel) for appellant.

Maynard & Maynard, of Rockford (James F. Maynard, of counsel) for defendant-appellee.

JUSTICE SOLFISBURG delivered the opinion of the court.

Plaintiff filed a complaint against the defendant in the Circuit Court of Winnebago county, Illinois, which consisted of four counts. In Count I plaintiff alleged the following: Plaintiff, on January 13, 1956, owned and occupied a certain single family dwelling and two-car frame garage in the City of Rockford. In his garage plaintiff kept a number of listed items of personal property of the fair cash value of $1,202.90. On January 13, 1956, defendant, then of the age of five (5) years and eleven (11) months, "tortiously and wrongfully" set fire to plaintiff's garage causing the garage and contents to be burned and destroyed. As a result of the fire the plaintiff was compelled to expend $2,165 to rebuild and restore the garage and suffered the loss of all the contents of the garage valued at $1,202.90. Plaintiff prayed damages in the total amount of $3,367.90 for damage to building and loss of personal property in the garage, plus costs of suit.

Count II repeated all the allegations in Count I, but included an additional allegation which asserted that on the date in question defendant's father had in force a comprehensive general liability policy of Commercial Insurance Company of Newark, New Jersey (a copy of which was attached to the complaint), protecting the insured, including the defendant, from property damage claims up to $50,000 and further, that plaintiff agreed to look only to the insurance company for satisfaction of any judgment secured.

Count III alleged substantially the same facts as Count I, omitting, however, an allegation that the fire was "tortiously and wrongfully" set, but merely asserting that defendant set fire to plaintiff's garage, that by reason of plaintiff's necessary expenditures to restore and replace his property, the defendant became indebted to plaintiff in the sum of $3,367.90.

Count IV repeated and realleged the paragraphs contained in Count III, but added a paragraph setting forth the fact of insurance just as alleged in Count II, and plaintiff again agreed to look only to the insurance carrier for satisfaction of any judgment.

Defendant filed a motion to strike the four counts of plaintiff's second amended complaint on the ground that the counts were "wholly insufficient in law or fact to state a cause of action against defendant." After argument, the trial judge granted the defendant's motion. Plaintiff elected to stand by the complaint and thereupon a final judgment was entered against plaintiff and for defendant. From that judgment plaintiff perfected this appeal.

An examination of the plaintiff's amended complaint reveals that he advances what appear to be four theories of recovery. Count I sounds in tort ("tortiously and wrongfully"). Count II also alleges the same tortious conduct on the part of the defendant, but refers to the insurance coverage to which plaintiff agrees to look for a recovery. Neither Count I nor Count II, which use the words "tortiously and wrongfully," are based upon negligence on defendant's part as they do not accuse him of negligence, carelessness or failure to exercise any duty of care toward plaintiff. In short the tort alleged must be considered to have been an intentional or non-negligent one.

Count III alleges the same facts as Count I and Count II, but alleges a cause of action sounding in assumpsit (quasi contract) for the property destroyed. Count IV also sounds in assumpsit or quasi-contract

297

for the property loss sustained by defendant's setting fire to the plaintiff's property; however, it contains an additional paragraph alleging the liability insurance policy purchased by defendant's father.

Plaintiff in his brief contends that an action for tortious damage to property may be maintained in Illinois against a child of almost six years of age; that at common law all persons of whatever age were subject to tort liability, and by Illinois statute the common law is considered as of full force until repealed by legislative authority. Plaintiff also urges that he has an action in quasi-contract against a minor of the age of six years. An additional argument which plaintiff advances is that the policy of insurance protects the defendant child's estate, thereby eliminating any reason for granting the child immunity for his torts or quasi-contractual debts.

Defendant maintains that the complaint was properly dismissed because there can be no cause of action for tortious damage to property by a child under the age of seven years. Defendant argues that in Illinois there is a conclusive presumption that a child under seven years of age is incapable of such conduct as will constitute contributory negligence; that based on such a conclusive presumption with reference to contributory negligence, the courts in Illinois have impliedly extended that conclusive presumption to negligence of a minor defendant and even to his non-negligent tortious conduct; that accordingly the defendant as a matter of law cannot be liable for the results of his setting fire to plaintiff's garage.

The principal issue, therefore, before us is whether a cause of action for such a non-negligent tort or pure tort, as it is sometimes called, may be maintained in Illinois against a minor of the age of six years. The parties agree that there are no decisions of any court of review in Illinois on this precise issue.

Two early decisions of the Supreme Court of Illinois contain dicta to the effect that infants are liable for their torts (Davidson v. Young, 38 Ill. 145; Wilson v. Garrard, 59 Ill. 51). Similar dictum is found in an opinion of this court (Hunter v. Egolf Motor Co., 268 Ill. App. 1, 4) and of other appellate courts (Reed v. Kabureck, 229 Ill. App. 36, 40). These precedents are of little assistance here since their facts are so markedly different from the facts in the instant case.

We point out again that no count of plaintiff's second amended complaint is based on negligence. Defendant cites the following cases as being determinative of the issue on appeal: Chicago City Ry. Co. v. Tuohy, 196 Ill. 410; Maskaliunas v. Chicago & W. I. R. Co., 318 Ill. 142; Crutchfield v. Meyer, 414 Ill. 210; Illinois Cent. R. Co. v. Jernigan, 198 Ill. 297; Chicago West Division Ry. Co. v. Ryan, 131 Ill. 474; Village of Clayton v. Brooks, 150 Ill. 97; O'Connell v. Yellow Cab Co., 222 Ill. App. 118; United States Brewing Co. v. Stoltenberg, 113 Ill. App. 435; Moser v. East St. Louis & Interurban Water Co., 326 Ill. App. 542; DeVine v. Chicago Rys. Co., 189 Ill. App. 435. Upon examination we find that these are all cases involving the question of contributory negligence of a minor plaintiff and the conclusive presumption with regard thereto which Illinois follows in the case of minors below the age of seven years. There is nothing in the cases cited by defendant which would require or even justify extending this conclusive presumption to intentional or non-negligent conduct of a minor defendant. Contributory negligence involves the question of a standard of care, while no such question is a material consideration in the case of non-negligent torts. Accordingly, we are not persuaded by defendant's contributory negligence cases that the common law in Illinois bars a cause of action in pure tort against a minor below the age of seven years.

 The legislature has provided by statute that an infant under the age of ten years shall not be found guilty of any crime or misdemeanor (Ill. Rev. Stats. 1955, Ch. 28, § 591), but that statutory provision has never been construed to apply to tortious conduct. The Supreme Court of this state has definitely decided that a child under the age of seven years is incapable of such conduct as will constitute contributory negligence; that between the ages of seven and fourteen the question of contributory negligence of a child is an open question of fact and must be left to the jury to determine taking into consideration the age, capacity, intelligence and experience of the particular child and that when a child has attained the age of fourteen years he is held to the same degree of care for his own safety which is required of an adult, his age and experience being considered, (See e.g. Maskaliunas v. Chicago & W. I. R. Co., 318 Ill. 142). But again these decisions involve contributory negligence.

It thus appears that so far as the courts in Illinois are concerned, the issue before us brings us to waters still uncharted. Since by statute in Illinois (Ill. Rev. Stats. 1955, Ch. 28, § 1) the common law shall be the rule of decision in the absence of legislation to the contrary, our inquiry must turn to the matter of tort liability of infants at common law.

In discussing the matter of legal capacity at common law to commit torts, the Restatement of Torts states (Comment *a* to § 887, pp. 467–68 (1939)):

"The common law regards all persons of whatever age or physical condition as being subject to tort liability. There is in this respect no legal incapacity. Thus since the law imposes upon the owner or possessor of land a duty to have care used to prevent the land from being dangerous to persons upon an adjacent highway, a six months old insane owner of the land is as liable for harm caused to such persons by a condition which the exercise of care would have avert-

300

ed as if he were of full age and sound mind. Where a tort requires a particular state of mind, a person whose mental condition precludes its existence avoids liability, not because of legal incapacity, but because his conduct does not bring him within the rule upon which liability depends. Thus an idiot may be liable for a trespass to land which requires only an intent to enter (see § 164, Comment *a,* vol. I), while he may not have sufficient mind to be liable for a false imprisonment which requires an intent to imprison . . ."

To the same effect is 27 Am. Jur., Infants §§ 90, 91, which point out that:

"Although . . . the general rule applicable to contracts is that the infant may avoid liability thereon, the general rule in the law of torts is that he is absolutely liable. Liability of an infant in a civil action for his torts is imposed as a mode, not of punishment, but of compensation. If property has been destroyed or other loss occasioned by a wrongful act, it is just that the loss should fall upon the estate of the wrongdoer rather than on that of a guiltless person, and that without reference to the question of moral guilt. Consequently, for every tortious act of violence or other pure tort, the infant tort-feasor is liable in a civil action to the injured person in the same manner and to the same extent as an adult. It is frequently stated that an infant is liable for his torts generally where they have no basis in any contract relation, or that an infant is liable for his torts which are not connected with and do not arise out of contracts. Infancy, being in law a shield and not a sword, cannot be pleaded to avoid liability for frauds, trespasses, or torts. Thus, an infant is liable for injuries caused by his negligence.

"The age of the infant is ordinarily immaterial, although there are some exceptions to this rule. A child of tender years may be held liable for acts of violence,

and liability has often been imposed for the injuries caused by such acts, although committed in play and without the intent to inflict substantial injury. Of course, if the injury was an accident, or the acts of the child were only the natural activity of friendly play, there is no liability.

. . .

"§ 91. Liability as Affected by Mental Capacity.— The general rule that infants are responsible, like other persons, for their torts is subject to the qualification that the torts for which they are so liable must not involve an element necessarily wanting in their case. Their liability may be affected by their mentality. Thus, in the case of slander, malice is a necessary ingredient in the wrong. But the law presumes that an infant under the age of seven years is not doli capax. It is obvious, therefore, that in the case of slander an infant cannot be held liable for his tort until he arrives at that age or acquires that capacity which renders him morally responsible for his actions. . . ."

To the same effect are Prosser on Torts (1941 ed.) Ch. 21, § 1085, pp. 1085–89, 43 C.J.S. Infants § 87, and 31 C.J. Infants, § 203, note 26, which point out that it is well settled that an infant is civilly liable for his torts unconnected or disconnected with his contract, unless in the commission of the tort there is required to exist some element which the infant is not presumed to possess.

One of the early leading cases in this country illustrative of the common law rule is Huchting v. Engel, 17 Wis. 230, 84 Am. Dec. 741 (1863). There plaintiff sued a six year old boy for trespass to land, alleging and proving that the defendant had broken and entered plaintiff's premises and destroyed his flowers and shrubs. The Supreme Court of Wisconsin opinion reads in pertinent part, pp. 231–2:

"Infants are liable in actions arising ex delicto, whether founded on positive wrongs, as trespass or assault, or constructive torts or frauds." 2 Kent's Com. 231.

"Where a minor has committed a tort with force, he is liable at any age; for in case of civil injuries with force, the intention is not regarded; for in such case a lunatic is as liable to compensate in damages as a man in his right mind." Reeve's Com. Rel., 258.

. . .

The authorities cited by the counsel for the defendant in error have no bearing on the question. They relate to the criminal responsibility of infants; to the question of negligence on their part, as to whether it can be imputed to them so as to defeat actions brought by them to recover damages for personal injuries sustained in part in consequence of the negligence or unskilfulness of others; and to the liability of parents and guardians for wrongs committed by infants under their charge by reason of the neglect or want of proper care of such parents or guardians. The case at bar is none of these. The defendant is not prosecuted criminally; the action is not by him to recover damages for personal injury occasioned by the joint negligence of himself or his parents, and another; nor is the liability of the parents involved. The suit is brought to recover damages for a trespass committed by him; not vindictive or punitory damages, but compensation; and for that he is clearly liable. If damages by way of punishment were demanded, undoubtedly his extreme youth and consequent want of discretion would be a good answer.

The liability in tort of infants and insane persons has always been recognized to be parallel, Prosser on Torts (1941 ed.) Ch. 21, § 108, p. 1089. In a comparatively recent case involving tortious conduct similar

303

to the conduct here alleged, the Wisconsin Supreme Court adopted reasoning which we regard as persuasive here. The case referred to is In re Guardianship of Meyer, German Mut. Fire Ins. Co. v. Meyer, 218 Wis. 381, 261 N. W. 211. There the defendant caused the destruction of a barn by fire. He was charged with the crime of arson, was found to be insane and committed to an insane asylum. Thereafter the insurance carrier which had paid the owner of the barn therefor took an assignment of the claim and sued the defendant. The jury by a special verdict assessed the damages, found the defendant was insane at the time of the fire, but also found that he did not intentionally set the fire. The latter finding being opposed to the uncontradicted evidence, the trial judge set aside the verdict and ordered a new trial. On appeal from that order, the Wisconsin Supreme Court reversed the lower court and ordered judgment for the plaintiff and against the defendant in the amount of the loss. In so holding, the Court commented, pp. 213–14:

"The question of the civil liability of an insane person for his torts has seldom been presented to this court for its consideration. In Huchting v. Engel, by his Guardian, 17 Wis. 230, at page 231, 84 Amer. Dec. 741, which was an action involving the civil liability of an infant, in an action for compensatory damages for a trespass, we find the following quotation in the opinion by Chief Justice Dixon; 'Where the minor has committed a tort with force, he is liable at any age; for in case of civil injuries with force, the intention is not regarded; for in such a case a lunatic is as liable to compensate in damages as a man in his right mind.' "

In Williams v. Hays, 143 N. Y. 442, at page 446, 38 N. E. 449, 450, 26 L. R. A. 153, 42 Am. St. Rep. 743,

304

discussing the question of civil liability of an insane person, the court said:

"The general rule is that an insane person is just as responsible for his torts as a sane person, and the rule applies to all torts, except, perhaps, those in which malice, and therefore intention, actual or imputed, is a necessary ingredient, like libel, slander, and malicious prosecution. In all other torts, intention is not an ingredient, and the actor is responsible, although he acted with a good and even laudable purpose, without any malice. The law looks to the person damaged by another, and seeks to make him whole, without reference to the purpose or the condition, mental or physical, of the person causing the damage. The liability of a lunatic for his torts, in the opinions of the judges, has been placed upon several grounds. The rule has been invoked that, where one or two innocent persons must bear a loss, he must bear it whose act caused it. . . . The lunatic must bear the loss occasioned by his torts, as he bears his other misfortunes, and the burden of such loss may not be put upon others." . . .

An even more recent decision is Ellis v. D'Angello, 116 Cal.App.2d 310, 253 P.2d 675, involving, among other things, the legal sufficiency of a count in a complaint alleging battery by a four-year-old boy. After reviewing the authorities which we have cited above, the court observed, p. 677:

"From these authorities and the cases which they cite it may be concluded generally that an infant is liable for his torts even though he lacks the mental development and capacity to recognize the wrongfulness of his conduct so long as he has the mental capacity to have the state of mind necessary to the commission of the particular tort with which he is charged. Thus as between a battery and negligent injury an infant may have the capacity to intend the violent con-

tact which is essential to the commission of battery when the same infant would be incapable of realizing that his heedless conduct might foreseeably lead to injury to another which is the essential capacity of mind to create liability for negligence."

The court concluded that whereas a negligence count against the four-year-old boy would be legally insufficient, the count for battery was sufficient, the court being unable to say that a boy of that age was incapable of intending the violent or harmful striking of another. Recognition of the wrongful character of the tort is immaterial, as the court noted.

█ Without subscribing perhaps to all that is contained in the various authorities cited, we are drawn to the conclusion that on the facts alleged in Count I of plaintiff's second amended complaint a cause of action is stated. The tort of setting fire to the building or property of another does not involve an element necessarily lacking in the case of a minor six years of age. Unless defendant was not capable of possessing the intent to do the act which he allegedly did, namely, set fire to plaintiff's garage, Count I must be regarded as legally sufficient. Without presuming to know all the capabilities or limitations of the mind of a six year old, nevertheless, we cannot say that a six-year-old child is incapable of intending to set fire to a building. Whether a six-year-old minor had such intent is a fact question, but so far as the sufficiency of the complaint is concerned, we hold Count I states a cause of action and the trial court erred in holding to the contrary.

Turning to Count III, it is apparent that it is framed on the theory of quasi-contract or what under common law pleading was called the common counts (indebitatus assumpsit). See Edmunds Civil Practice Forms (1933 ed.), Vol. 1, Note 1, p. 503. In fact, Count III states a cause of action based on the same tort de-

scribed in Count I, though with insignificant differences in language. Since Counts I and III both pertain to the same tort, and the common law forms of action are now abolished (Ill. Rev. Stats. 1955, Ch. 110, § 31), we find no error in the trial court's striking of Count III of the Second Amended Complaint.

■ Counts II and IV allege the existence of insurance, and plaintiff argues that any immunity granted an infant for the consequences of his torts should be disregarded when the dissipation of his estate is thus rendered impossible. Plaintiff relies by analogy upon the tort immunity cases involving charitable institutions (Moore v. Moyle, 405 Ill. 555, and Wendt v. Servite Fathers, 332 Ill. App. 618). However, since solvency and financial position have never been considerations in the matter of infant tort liability, we do not regard the fact of insurance as material in a case of this kind. The Supreme Court of Washington has recently taken this same view (Garrett v. Dailey, 46 Wash.2d 197, 279 P.2d 1091, 1095). Accordingly, since the allegations concerning insurance are surplusage, we find no error in the striking of Counts II and IV, as they are then but repetitions of Count I.

For the foregoing reasons, we hold Count I of the Second Amended Complaint to be legally sufficient, while Counts II, III and IV which merely restate the same cause of action alleged in Count I were properly stricken. The judgment of the Circuit Court of Winnebago county is, therefore, reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

CROW, P. J. and WRIGHT, J., concur.