NANCY FEAR, Plaintiff-Appellee and Cross-Appellant, v. JAMIE SMITH, a Minor, Defendant-Appellant and Cross-Appellee (Karen Wallace *et al.,* Defendants).

Fifth District   No. 5—88—0133

Opinion filed June 5, 1989.—Rehearing denied July 12, 1989.

Richard Briles Moriarty, of Shorewood, Wisconsin, for appellant.

Brent D. Holmes, of Harlan Heller, Ltd., of Mattoon, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Following a bench trial in the circuit court of Jasper County, plaintiff, Nancy Fear, was awarded $5,000 for pain and suffering and $71.95 for medical expenses in her personal injury action against defendant Jamie Smith. In addition, the court ordered each party to pay one-half, or $1,296.40, of the costs and fees of the guardian *ad litem* who had been appointed to represent Smith, a minor. The court provided, however, that the share of the fees and costs owed by plaintiff would be assessed as costs which she was entitled to recover from Smith. Smith now appeals, arguing: (1) that the circuit court erred in denying his motion for a directed judgment; (2) that the circuit court's judgment is contrary to the manifest weight of the evidence; (3) that the circuit court erred in denying his post-trial motion based on newly discovered evidence; and (4) that the circuit court should have required plaintiff to pay all of the guardian *ad litem*'s fees and should have made the fee award higher. Plaintiff cross-appeals, contending that it is Smith who should be responsible for the full amount of the guardian *ad litem*'s fees and costs. She also claims that the circuit court erred in refusing to award her damages for lost wages. For the

reasons which follow, the judgment shall, with certain modifications, be affirmed.

The events which gave rise to this litigation took place on the morning of July 21, 1983. Smith, who was nine years old at the time, was in the yard of his home burning trash with a blow torch. Burning the trash had apparently become one of his regular jobs around the house. Although Smith was apparently supposed to use matches to start the fire and did not have permission to use the blow torch, he had learned how to use the torch by observing his stepfather and knew how it operated.

Plaintiff was a mail carrier with the United States Post Office, and her route included Smith's house. Shortly before plaintiff reached the house on the morning of the 21st, Smith took the blow torch and heated the mailbox. The testimony, when viewed in the light most favorable to plaintiff, the prevailing party, indicates that Smith decided to heat the mailbox after he saw plaintiff approach. There was some indication that he did so to retaliate against plaintiff, who had once chastised him for obstructing her mail truck with a lawnmower. Plaintiff did not see what Smith had done, and by the time she reached the house he had run inside. Smith claims that he was not trying to run away, but that he went to ask the babysitter to warn plaintiff not to touch the mailbox and to get some ice with which to cool the mailbox down. In fact, the babysitter was not summoned or chose not to respond. No ice was used to cool the mailbox. The box was still hot when plaintiff reached the house. Because of the way the box was constructed, she had to reach inside to open the lid. When she realized how hot the box was, she tried to pull her hand out, but it got stuck and took about 30 seconds for her to free it. As a result, plaintiff's hand was seriously burned.

Plaintiff sought medical treatment for her burns at the Weber Medical Clinic. There, a salve was applied and plaintiff's fingers were bandaged. She returned to the clinic for treatment once a week for three weeks. Plaintiff testified that she suffered constant pain for the first few days following the injury. The pain gradually dissipated, but at least two months passed before her hand was completely healed.

Plaintiff's medical expenses for the treatment she received at the clinic were $71.95. In addition, she missed slightly over three weeks of work. Her wages for that period would have been approximately $1,263. She did receive a payment in that amount, but that payment did not constitute part of her regular wages. It was made under "CAP," a fringe benefit she had through her employer which provided for the continuation of pay when one could not continue to work be-

cause of a job-related injury.

In the spring of 1985, plaintiff filed suit in the circuit court of Jasper County to recover damages for the injuries she sustained in this incident. Named as defendants were Karen Wallace, Smith's mother; Charles Wallace, Smith's stepfather; and Smith himself. In 1986, plaintiff obtained a default judgment against them. Thereafter, a guardian *ad litem* (GAL) was appointed for Smith. The GAL then moved to set aside the default judgment as to Smith. That motion was granted and the case proceeded to trial on the merits against Smith alone. At the conclusion of the trial, the circuit court entered judgment in favor of plaintiff. It awarded her a total of $5,071.95. Of this, $5,000 was for "past and future pain and suffering" and $71.95 was for the cost of plaintiff's medical treatment. Smith then filed a post-trial motion, and the GAL petitioned for an award of his reasonable fees, costs and expenses.

Following a hearing, the circuit court denied Smith's post-trial motion, but awarded the GAL fees and costs in the amount of $2,592.80. In its order, the court specified that one-half of this amount, or $1,296.40, was to be paid by Smith and that the other half was to be paid by plaintiff. The court indicated, however, that "to the extent paid by Nancy Fear, her payment shall be recoverable as part of the court costs against Jamie Smith." Smith now appeals. Plaintiff cross-appeals.

At the conclusion of plaintiff's case, Smith requested that a directed judgment be entered in his favor pursuant to section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1110). That motion was denied, and Smith first argues on this appeal that the denial constituted reversible error. This argument is not well taken. After Smith's motion was denied, he proceeded to adduce evidence in support of his defense. Section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1110) expressly provides, however, that if a defendant proceeds to adduce evidence in support of his defense after having his motion for a directed judgment denied, "the motion is waived." This statute is clear, unambiguous, and contains no exceptions. Smith will therefore not now be heard to complain that the circuit court's ruling on the motion was erroneous.

Smith next argues that the circuit court's judgment is contrary to the manifest weight of the evidence because plaintiff failed to establish his liability. Because this argument is raised for the first time in Smith's reply brief, plaintiff argues that it has also been waived. Smith has responded by arguing that because he is a minor, this court has a special obligation to protect his rights and that the rules on

waiver should be relaxed. In our view, we need not reach the question of waiver, for this argument must fail on the merits.

■■■ Plaintiff's recovery against Smith was based on willful and wanton misconduct. In contrast to an ordinary negligence claim, an action for willful and wanton misconduct requires a showing that injury was caused intentionally or under circumstances exhibiting a reckless disregard for the safety of others. (*Hough v. Mooningham* (1986), 139 Ill. App. 3d 1018, 1021, 487 N.E.2d 1281, 1284.) Smith was only nine years old at the time of the incident, but infants are generally liable for their intentional, malicious or willful acts or torts. (43 C.J.S. *Infants* §190, at 505 (1978).) *McWethy v. Lee* (1971), 1 Ill. App. 3d 80, 272 N.E.2d 663 notwithstanding, we find no merit to Smith's claim that there was a rebuttable presumption that he was incapable of willful and wanton misconduct. The presumption he seeks to invoke, applicable to children between 7 and 14 years of age, originated in cases involving contributory negligence. We do not think that it controls in cases where liability is premised on an intentional tort. *Seaburg v. Williams* (1958), 16 Ill. App. 2d 295, 299, 148 N.E.2d 49; *Jorgensen v. Nudelman* (1963), 45 Ill. App. 2d 350, 352-53, 195 N.E.2d 422.

■ The record here contains ample evidence from which one could conclude not only that Smith intentionally heated the mailbox, but that he also realized that, in so doing, he would subject plaintiff to injury. Smith was certainly familiar with heat and fire. After all, one of his jobs was to burn the trash. He understood that the blow torch could generate extreme heat, and in fact had used it on the day in question to burn debris. He specifically admitted that he understood that by using the blow torch on the mailbox the metal would get hot. Smith testified that he knew that plaintiff would be "coming around to deliver the mail in just a few moments," and conceded that he knew "it was very likely the mailbox was still going to be extremely hot and she might be burned." He actually asserted that he went into the house to get the babysitter to tell plaintiff not to touch the handle and to obtain some ice to cool the mailbox. The babysitter was either never really summoned or else chose not to respond, and the ice was never applied to the mailbox. In any case, it is clear that Smith knew exactly what he was doing and what consequences it would have. There is even evidence from which the trial court could have concluded why Smith did it, namely, to retaliate against plaintiff for her having previously told him to move his riding lawnmower out of the way as she was making her rounds in her mail truck. Under these circumstances, the circuit court's determination that Smith had commit-

ted willful and wanton misconduct is not contrary to the manifest weight of the evidence.

Smith next argues the judgment should be reversed because the circuit court erred when it denied his post-trial motion. In the course of this litigation, plaintiff denied under oath that she had ever had any problems at all with her right hand prior to the injury for which she was suing Smith. In addition, Smith had propounded an interrogatory to plaintiff asking her to give the "names and addresses of all doctors and hospitals furnishing professional services to you within five years immediately preceding the date of the occurrence and furnish details as to the dates and duration of such services and the reasons for such services." To this, plaintiff responded by giving the name Dr. Don Hatten and indicating that she had seen him for "yearly check-up." After the trial, however, Smith learned for the first time that plaintiff had previously received medical treatment for her right hand from Dr. Lester Mason in Terre Haute, Indiana. In his post-trial motion, Smith asked that the judgment be vacated, that judgment be entered in his favor or, in the alternative, that a new trial be ordered on the grounds that this newly discovered evidence established that plaintiff's testimony had been false and that she had failed to properly comply with discovery rules. That motion was denied by the circuit court. The basis for the circuit court's decision was that the new evidence would not "have altered the outcome in any fashion with regard to this case." Smith now argues that the circuit court's decision constitutes reversible error. We disagree.

Motions after judgment in nonjury cases are addressed to the trial court's sound discretion. (*In re Marriage of Hopkins* (1982), 106 Ill. App. 3d 135, 137, 435 N.E.2d 897, 899; *In re Marriage of Rosen* (1984), 126 Ill. App. 3d 766, 775, 467 N.E.2d 962, 968.) Likewise, the imposition of sanctions for noncompliance with discovery rules rests largely within the discretion of the trial court, and the exercise of such discretion will not be disturbed unless it is an obvious abuse of discretion. (*Lubbers v. Norfolk & Western Ry. Co.* (1986), 147 Ill. App. 3d 501, 518, 498 N.E.2d 357, 369.) In this case, the medical records of the previous treatment were submitted to the circuit court for its review. Those records showed that plaintiff obtained numerous treatments for her hands, and, apparently, other parts of her body, between 1976 and 1979. Those treatments ended approximately four years before the occurrence giving rise to this litigation, however, and Smith failed to establish how, if at all, plaintiff's prior medical problems may have related to the injury she sustained here or affected the outcome of the case. At the conclusion of the hearing on the post-trial

motion, the circuit court specifically held, as we have indicated, that "the court does not find this item would have altered the outcome in any fashion with regard to this case." We have found nothing in the record which would support a contrary conclusion. Under these circumstances, we cannot say that denial of Smith's post-trial motion constituted an abuse of discretion.

■ Smith further argues that plaintiff should have been required to pay all of the GAL's fees and costs and that the circuit court therefore erred in requiring him to pay half. Plaintiff likewise takes issue with the circuit court's apportionment of the GAL's fees and costs. She argues, however, that they should be borne entirely by Smith and that she should be required to pay nothing. We believe that plaintiff's position is the correct one. Guardian *ad litem* fees may be allowed as costs. (See *Chamness v. Dawson* (1964), 51 Ill. App. 2d 221, 224, 201 N.E.2d 257, 258.) Where, as here, a plaintiff has prevailed against a minor defendant, no part of the GAL's fees may be taxed against the plaintiff. If allowed, they should be assessed against the minor defendant. (51 Ill. App. 2d at 224, 201 N.E.2d at 259.) To the extent that the circuit court purported to hold plaintiff liable for a portion of the GAL's fees, its judgment must be modified to eliminate that obligation.

■ The next argument made is that the amount of fees awarded to the GAL was insufficient. The GAL sought compensation at the rate of $70 per hour, but the circuit court's order provided for payment at the rate of only $40 per hour. In our view, this did not constitute reversible error. The $70-per-hour rate sought by the GAL was based on the services he performed in his capacity as attorney for Smith. Attorney fees, however, are not within the court's power to tax as costs. The fees allowed to the GAL could only be allowed as reasonable guardian *ad litem* fees, not as attorney fees. (51 Ill. App. 2d at 224, 201 N.E.2d at 258-59.) When viewed as guardian *ad litem* fees, as opposed to attorney fees, the amount awarded by the circuit court is sufficient.

■■ The final issue for our consideration, raised by plaintiff in her cross-appeal, is that the circuit court erred in refusing to award her damages for her lost wages. At trial, plaintiff established that during the period in which she missed work because of her injuries she would have earned approximately $1,263 in wages. The circuit court refused to award damages to plaintiff for these lost wages because, as we have previously indicated, plaintiff did end up receiving payments equal to this sum through her employer. The record shows, however, that the payments received by plaintiff were not wages, but

were a fringe benefit offered by plaintiff's employer to provide compensation to workers who were incapacitated due to work-related injuries. Under the collateral source rule, evidence that plaintiff received payments while disabled, due to an accident, in the form of workmen's compensation or disability insurance payments or gratuitous payments from the employer are not admissible in a civil suit by plaintiff for damages (*Wolfe v. Whipple* (1969), 112 Ill. App. 2d 255, 266, 251 N.E.2d 77, 82), and the receipt of such payments should not preclude plaintiff from recovery of lost wages (112 Ill. App. 2d at 266, 251 N.E.2d at 82; *Mineiko v. Rizzuto* (1965), 65 Ill. App. 2d 35, 38, 212 N.E. 2d 712, 714). The decision by the circuit court here to deny plaintiff damages for her lost wages was therefore erroneous.

Correction of this error does not require that the cause be remanded. No jury was involved, and the proper amount to which plaintiff is entitled can be ascertained definitely from the record before us. (See *Ginsburg v. Prudential Insurance Co. of America* (1938), 294 Ill. App. 324, 341, 13 N.E.2d 792.) Pursuant to our authority under Supreme Court Rule 366(a)(5) (107 Ill. 2d R. 366(a)(5)), we shall therefore simply order that the circuit court's judgment be modified to add an award to plaintiff of $1,263 for the wages she lost.

For the foregoing reasons, the judgment of the circuit court of Jasper County, as modified by this order, is affirmed.

Affirmed as modified.

WELCH, P.J., and RARICK, J., concur.