LUCILLE CONSOLINO, Plaintiff-Appellant, *v.* C. E. THOMPSON, d/b/a Thompson's Ice Cream, Defendant and Cross-Plaintiff-Appellant (L. Karp & Sons, Inc., Defendant and Cross-Defendant-Appellee).

First District (4th Division)   Nos. 83—2181, 83—2384 cons.

Opinion filed August 16, 1984.

Robert C. Sheridan, of Burdick & Smith, of Chicago, for appellant.

Brydges, Riseborough, Morris, Franke & Miller, of Chicago, for appellee L. Karp & Sons, Inc.

JUSTICE JIGANTI delivered the opinion of the court:

This action was commenced in order to recover for personal injuries allegedly sustained by the plaintiff, Lucille Consolino, when a metal object, which was apparently contained in a chocolate iced longjohn she had ingested, became imbedded in her throat. The plaintiff brought this suit, sounding in strict liability and negligence against defendants, C. E. Thompson, the bakery which manufactured and sold the longjohn, International Multifoods Co., the supplier of flour (International) and L. Karp & Sons, Inc., the supplier of chocolate syrup (L. Karp). In the count against L. Karp, the plaintiff alleged that the syrup was defective and unreasonably dangerous in that it contained a foreign metal object which rendered said syrup unsafe for use in the baking products manufactured by Thompson. In a countercomplaint for indemnity based on strict liability, Thompson

named International and L. Karp as counterdefendants. After answers were filed, L. Karp filed a motion for summary judgment as to Consolino's complaint and Thompson's countercomplaint. The circuit court granted L. Karp's motion, and Thompson now appeals, with the plaintiff adopting both Thompson's brief and oral argument. Only strict liability was argued.

On appeal, Thompson and the plaintiff contend that sufficient evidence was presented to make the reasonable inference that the metal object that lodged in the plaintiff's throat came from L. Karp's container of chocolate syrup and that therefore the trial court erred in granting L. Karp's motion for summary judgment. The plaintiff's and Thompson's argument in developing the above inference is based on the fact that there are only three possible sources from which the metal object could have come; itself, L. Karp and International, and that the only evidence of the use of metal objects near the finished product or its ingredients was a metal clip used by L. Karp in its packaging of the chocolate syrup. In response, L. Karp asserts that regardless of the possibility of drawing the inference suggested above, there was simply no evidence in the record which shows that the product was unreasonably dangerous when it left L. Karp's control.

In support of their contention, the only evidence Thompson and the plaintiff can point to in the record is as follows: the chocolate iced longjohn was manufactured and sold by Thompson and its only two ingredients were flour and chocolate syrup, which were supplied by International and L. Karp respectively. Furthermore, in deposition, Lawrence Kaiser, the manager of Thompson, testified that the only metal objects used in his store were staples. He stated that they were exclusively used in his office and that they were never used in the baking area. International, in response to interrogatories regarding the use of metal objects in its production process, stated that their quality control system insured the absence of any metallic objects within their flour. The most revealing evidence, as asserted by Thompson and the plaintiff, was that presented at the deposition of Stanley Lorenz, baker supervisor for Thompson. The only part of Lorenz' deposition utilized in their argument is wherein Lorenz stated that the chocolate syrup sold by L. Karp was packaged in a plastic pail that was sealed with a metallic clip. While it was not argued how using a metallic clip in the packaging process creates an unreasonably dangerous product, Thompson and the plaintiff did argue that the above cumulative circumstantial evidence creates the undeniable inference that the metal clip that lodged in the plaintiff's throat

came from L. Karp's container.

In order to prove their case against L. Karp, the plaintiff and Thompson must prove (1) that the plaintiff's injury resulted from a condition of the product; (2) the condition was an unreasonably dangerous one; and (3) the condition existed at the time the product left L. Karp's control. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.) These elements may be proven inferentially, by either direct or circumstantial evidence. (*Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 357 N.E.2d 449.) Circumstantial evidence is the proof of certain facts and circumstances from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind. *Benson v. Bradford Mutual Fire Insurance Corp.* (1984), 121 Ill. App. 3d 500, 459 N.E.2d 689.

The instant product liability action was decided at the summary judgment stage. A motion for summary judgment should be granted if the pleadings, depositions, admissions and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005; *Farmers Automobile Insurance Association v. Hamilton* (1976), 64 Ill. 2d 138, 355 N.E.2d 1.) However, where facts are undisputed, if a fair-minded person may draw different inferences from those undisputed facts, summary judgment cannot be granted. (*Cuthbert v. Stempin* (1979), 78 Ill. App. 3d 562, 396 N.E.2d 1197.) But, in order to draw other inferences, the evidence presented must only be of such a character that the inference drawn is reasonable. (See *Mort v. Walter* (1983), 98 Ill. 2d 391, 457 N.E.2d 18; *Pace v. McClow* (1983), 119 Ill. App. 3d 419, 458 N.E.2d 4.) Further, a product liability action cannot be decided on mere speculation, guess or conjecture, so that the circumstances shown must justify an inference of probability as distinguished from mere possibility. *Mateika v. La Salle Thermogas Co.* (1981), 94 Ill. App. 3d 506, 418 N.E.2d 503; see *Tiffin v. Great Atlantic & Pacific Tea Co.* (1959), 18 Ill. 2d 48, 162 N.E.2d 406.

What is considered sufficient evidence in order to draw a reasonable inference is a measure that has eluded being specifically standardized by any court that has attempted to articulate such a formula. A ruling of this sort will depend entirely upon the nature of the evidence offered in the case at hand, and it will seldom be possible for such a ruling to serve as a precedent. (See 9 Wigmore, Evidence sec. 2494, at 383 (Chadbourn rev. 1981).) In a leading scholarly work on the subject, Professor Fleming James writes in part:

"The question of sufficiency of circumstantial evidence to prove a fact is more complex and subtle. It turns on the concept of legitimacy of the desired inference. If A is shown, then the trier may infer B from A if, but only if, the inference is a rational one. The test of rationality is usually expressed in terms of probabilities. Where from the proven facts the nonexistence of the fact to be inferred appears to be just as probable as its existence (or more probable than its existence), then the conclusion that it exists is a matter of speculation, surmise, and conjecture, and a jury will not be allowed to draw it. This test suggests mathematical precision, but the suggestion is spurious. For one thing, we lack the quantitative data about most matters which would be needed to make meaningful statements in terms of probabilities. Of course some broad generalizations would command general assent. These are the judgments of "common sense," but even they are fallible. How often the science of the morrow makes today's common sense look foolish! Moreover the area is vast wherein thoughtful men who accept today's common sense would either disagree or refuse to guess on which side of the line the greater probability lay.

\* \* \*

It appears then that the test, formulated in terms which suggests objective, scientific precision, is in fact one which gives the courts little guidance and great latitude. Even where expert evidence concerning probabilities is available it is seldom offered. Instead, courts are constantly asserting or assuming broad generalizations about human behavior on all sorts of other matters which either rest on their own very fallible notions about such things (which, since judges are human, often reflect veritable old wives' tales current in the culture of the community), or spring from considerations of policy and expediency." (James, *Sufficiency of the Evidence and Jury-Control Devices Available Before Verdict*, 47 Va. L. Rev. 218, 221-22 (1961).)

An insightful summation on the subjects of the sufficiency of evidence and the reasonableness of inferences is provided by Justice Rutledge, wherein he stated: "The boundary between substance and shadow is hard to draw. Men, including judges, differ about it, always in concrete cases. What is substance to one may be shadow to another. The line cannot be drawn by magic of word or formula. It is not susceptible of generalization. It is always relevant to the issues

and the evidence in a particular case. Hence, in the end, a kind of intuitive evaluation must be made, that the verdict does not or would not shock the judicial sense of justice." *Christie v. Callahan* (D.C. Cir. 1941), 124 F.2d 825, 827.

In the case at bar, in order for Thompson and the plaintiff to prevail they must allege sufficient facts from which it is reasonable to draw the inference that L. Karp provided unreasonably dangerous chocolate syrup when it left L. Karp's control and that said syrup injured the plaintiff. The only evidence that the plaintiff presented merely established that L. Karp's packaging utilized a metal clip, whereas the other two named defendants, Thompson and International, did not use any such metallic object and that Thompson, International and L. Karp were the only three sources from which a metal object could have come. Given the facts presented, on a continuum of possibilities, to draw the inference that because L. Karp packages its syrup by using a metal clip and therefore its product is unreasonably dangerous is clearly not reasonable, but rather is utter speculation and conjecture. While it is possible to infer that the metal object that lodged in the plaintiff's throat did come from L. Karp's syrup container, such an inference is irrelevant since the record is completely devoid of any evidence that reasonably suggests that packaging syrup with a metal clip creates a product in an unreasonably dangerous condition. As mentioned above, there is no mathematical precision when it comes to ruling on a motion for summary judgment. Instead, the court makes more of an intuitive evaluation of the evidence before it and primarily renders a decision based on such assessments. In the instant case, because of the scant evidence presented, there was little question that the plaintiff failed to establish that L. Karp's product was unreasonably dangerous when it left its control. Therefore, the motion for summary judgment was properly granted.

Based on the foregoing, the judgment of the trial court is affirmed.

Affirmed.

LINN, P.J., and JOHNSON, J., concur.