ZYGMUNDT WOJTOWICZ, as Special Adm'r of the Estate of Tomasz Golinski, Deceased, Plaintiff-Appellant and Cross-Appellee, v. PAUL CERVANTES *et al.*, Defendants-Appellees and Cross-Appellants.

First District (4th Division)   No. 1—93—4264

Opinion filed October 17, 1996.

Freidman & Olson, of Chicago (Roy Olson, of counsel), for appellants.

Iverson, Carlson & Associates (Herb Carlson and Timothy Lowery, of counsel), and Levin, McParland, Phillips, Leydig & Haberkorn, both of Chicago (Lynn D. Dowd, of counsel), for appellee.

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff's cause of action arises from a fatal truck-bicycle accident occurring on May 29, 1987, at the intersection of Addison and California Streets in Chicago. Defendant Paul Cervantes, a driver for Holmes Freight Lines (Holmes), crushed plaintiff's decedent, 15-year-old bicyclist Tomasz Golinski, under the right rear tandem tires of his semi tractor-trailer. Plaintiff filed a wrongful death complaint against Cervantes and Holmes on June 17, 1987. Following a jury trial, plaintiff obtained a verdict against defendants. The defendants filed a post-trial motion seeking, *inter alia*, judgment notwithstanding the jury's verdict or, alternatively, a new trial. Citing a statement made by plaintiff's counsel during closing argument regarding special interrogatories, the trial court granted defendants' motion for a new trial.

Plaintiff appeals from the trial court's interlocutory order pursuant to Supreme Court Rule 306 (134 Ill. 2d R. 306). Holmes cross-appeals, alleging the trial court erred in failing to grant its post-trial motion for judgment notwithstanding the verdict and in refusing to grant its pretrial motion to dismiss for lack of due diligence in service of process.

## OPINION

I. Service of Process

The accident at issue in this case occurred on May 29, 1987, and plaintiff timely filed suit on June 17, 1987. According to the return of service filed with the court clerk, defendant Cervantes was personally served on June 20, 1987. According to a statement by its agent for receipt of service of process, defendant Holmes was served on June 22, 1987; however, no return of service was filed. More than two years later, on September 29, 1989, summons was again served on

Holmes and proof of service properly filed with the court on October 11, 1989.

Citing *Werner v. W.H. Shons Co.*, 341 Ill. 478, 486, 173 N.E. 486, 490 (1930), Holmes contends that until plaintiff's affidavit of compliance is filed with the clerk, the trial court can have no basis for determining whether service was proper and therefore the trial court erred in refusing to grant its pretrial motion to dismiss for lack of due diligence in service of process. We disagree.

■ Supreme Court Rule 103(b) provides, in pertinent part:

"If the plaintiff fails to exercise reasonable diligence to obtain service prior to the expiration of the applicable statute of limitations, the action as a whole or as to any unserved defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice." 134 Ill. 2d R. 103(b).

However, Supreme Court Rule 102(d) clearly states that "[f]ailure of the officer or other person to return the summons or file proof of service does not invalidate the summons or the service thereof, if had." 134 Ill. 2d R. 102(d). Supreme Court Rule 12(b)(1) further provides that service may be proved by written acknowledgement signed by the person served. 145 Ill. 2d R. 12(b)(1). There is no requirement that the acknowledgement be in the form of a formal affidavit.

Plaintiff's response to defendant's motion to dismiss was filed with the court on December 29, 1989. Attached thereto were two exhibits relevant to the Rule 103(b) issue. Exhibit A was a letter dated December 19, 1989, to plaintiff's attorney from CT Corporation System, Holmes' registered agent for receipt of service of process. Exhibit B was an undated document entitled "Affidavit." Both documents were signed by CT Corporation System's employee Debra Schull and stated that she had received service of process for Holmes regarding the instant action on June 22, 1987.

■ Accordingly, on February 8, 1990, when the trial court decided Holmes' Rule 103(b) motion, it had before it a binding admission by Holmes' agent that process had in fact been received on June 22, 1987. Holmes' motion to dismiss was therefore properly denied. See *Burton v. Autumn Grain Transport, Inc.*, 222 Ill. App. 3d 755, 757, 584 N.E.2d 377 (1991).

## II. Closing Arguments

Following a two-week trial, the jury returned a verdict awarding plaintiff $2,533,538 for the wrongful death of Tomasz Golinski. On May 11, 1993, the circuit court entered a judgment on the jury's

verdict. In their post-trial motion, defendants sought a new trial, in part, on grounds the following passage from plaintiff's closing argument impermissibly advised the jury to harmonize its general verdict with its answers to the special interrogatories. The comment at issue was as follows:

> "MR. OLSON: Now, there will be instructions that ask you to consider whether Tom was comparatively negligent, and I submit to you that Tom was not. There will be what's called a special interrogatory, questions that you'll have to answer in addition to going through the verdict forms.
>
> *I submit to you that they should be answered in a very particular manner because if they're inconsistent with the general verdict, there's a big problem.*
>
> MR. LOWERY: Objection, your Honor.
>
> THE COURT: Sustained.
>
> MR. LOWERY: Ask that the jury disregard it.
>
> THE COURT: Disregard it." (Emphasis added.)

Following closing arguments, the special interrogatories were given to the jury over plaintiff's objection. They asked the jury to decide (1) whether plaintiff proved the defendants negligent, (2) whether the defendants proved that plaintiff's decedent was contributorily negligent, and (3) whether defendants proved that plaintiff's contributory negligence exceeded 50%. Answers to the foregoing questions were generally consistent with the general verdict form, which held for plaintiff's decedent and attributed $33^1/3$% comparative negligence to plaintiff's decedent.

In granting defendants' motion for a new trial, the trial court reasoned that there was "error" in counsel's statement to the jury in the closing arguments regarding the special interrogatory on the issue of comparative negligence, that the statement should not have been permitted to stand, and that the error was *per se* reversible.

On appeal, plaintiff argues the grant of a new trial constituted an abuse of discretion because the closing argument comment by plaintiff's counsel did not constitute reversible error. In addition, both plaintiff and defendants raise procedural and evidentiary issues to be addressed by this court in the event the order for a new trial is affirmed.

■ An attorney's remark to the jury concerning special interrogatories is *per se* reversible error where it advises the jury of their effect upon the general verdict. *Sommese v. Maling Brothers, Inc.*, 36 Ill. 2d 263, 267-68, 222 N.E.2d 468, 471 (1966). However, a closing argument comment that merely requests that the jury answer its special interrogatories "consistent" with the verdict is not *per se* re-

versible error providing a curative instruction is given. See *O'Neil v. Continental Bank, N.A.*, 278 Ill. App. 3d 327, 662 N.E.2d 489 (1996) (collecting cases).

We have reviewed the court's decision in *Sommese* and its progeny and determined that in cases of *per se* reversible error, there are two common scenarios. The jury was told either that the special interrogatory superseded the general verdict (*Sutton v. Peoples Gas Light & Coke Co.*, 119 Ill. App. 2d 471, 256 N.E.2d 19 (1970)), or that if plaintiff was to recover money damages, the special interrogatory had to be answered in a particular way (*Massa v. G. Helmkamp Excavating & Trucking Co.*, 145 Ill. App. 3d 60, 67-68, 495 N.E.2d 648 (1986); *Batteast v. Wyeth Laboratories, Inc.*, 137 Ill. 2d 175, 560 N.E.2d 315 (1990); *Lozado v. City of Chicago*, 279 Ill. App. 3d 285, 664 N.E.2d 333 (1996)). In cases that found no *per se* reversible error, there are also two common scenarios. The jury was told either that answering "no" to the particular special interrogatory was saying the plaintiff was at fault and shouldn't recover (*Moore v. Checker Taxi Co.*, 133 Ill. App. 2d 588, 592, 273 N.E.2d 514 (1971); *Burns v. Howell Tractor & Equipment Co.*, 45 Ill. App. 3d 838, 848, 360 N.E.2d 377 (1977); *Kosinski v. Inland Steel Co.*, 192 Ill. App. 3d 1017, 1028, 549 N.E.2d 784 (1989); *Blevins v. Inland Steel Co.*, 180 Ill. App. 3d 286, 291, 535 N.E.2d 972 (1989)), or that the special interrogatory and general verdict should be consistent, coupled with a curative instruction reminding the jury to answer the special interrogatory based upon the evidence (*O'Neil*, 278 Ill. App. 3d 327, 662 N.E.2d 489).

While, as the court in *Blevins* recognized, the distinction may seem slight, it is an important one. In cases of *per se* reversible error, the offensive comments were outcome driven. Each jury was informed that if it wanted the plaintiff to get money, the special interrogatory controlled (or that it had to be answered in a certain way). In cases of no *per se* reversible error, each jury was asked to answer the special interrogatory based upon the evidence. We find no case other than *O'Neil* where the single error alleged on appeal was that counsel's closing argument asked the jury to harmonize its special interrogatory response to its general verdict. As previously noted, the *O'Neil* case held this type of error could be cured by appropriate instructions to the jury.

Here, as in *O'Neil*, the single error alleged on appeal is that counsel for plaintiff informed the jury that if the special interrogatories were "inconsistent with the general verdict, there's a big problem." An objection was made, sustained, and the jury informed to disregard.

■ Defendants nevertheless argue that counsel's comment sug-

gesting "a big problem" informed the jury of the purpose and legal effect of the special interrogatories. We disagree. Although the comment was inadvisable, it cannot be said to have been result driven in the same way that a comment stating "if you want plaintiff to win, do 'X' " is, nor can it be said to have patently informed the jury that the interrogatories superseded the general verdict. In this context, "big problem" could have any number of interpretations. There is no suggestion in the record that the jury improperly considered the remark during its deliberations. Indeed, the jury's verdict itself demonstrates that counsel's comment was of no effect and that the grant of a new trial was an abuse of discretion.

The jury's verdict and its answers to the special interrogatories indicate that the jury found defendants negligent (rejecting defendants' argument decedent was tossed under Cervantes' truck by a hit-and-run driver) and attributed some negligence to plaintiff's decedent (rejecting plaintiff's argument there was no comparative negligence whatsoever). Moreover, the percentage of fault assigned to plaintiff's decedent by the jury was substantially less than 50%, further supporting the conclusion that it had not, in fact, answered the interrogatories merely to preserve its general verdict but, rather, had answered them upon the evidence presented. Accordingly, we conclude that counsel's comment did not result in prejudice to the defendants. See *Thorsen v. City of Chicago*, 74 Ill. App. 3d 98, 392 N.E.2d 716 (1979); *Lozado*, 279 Ill. App. 3d 285, 664 N.E.2d 333.

After carefully reviewing the court's decision in *Sommese* and considering the relevant cases from our own court, we find no *per se* reversible error here, and what error did occur was promptly cured by defendants' objection and the trial court's instruction to disregard. Counsel's single comment was far less serious than the statement made to the jury in *Sommese* or any case that has followed it.

III. Judgment Notwithstanding the Verdict

Defendants cross-appeal, arguing they were entitled, not merely to a new trial, but rather to a judgment notwithstanding the verdict because (1) plaintiff failed to prove proximate cause and (2) the jury verdict is against the manifest weight of the evidence. We disagree.

■ A negligence action requires proof of duty, breach, injury and causation. *Waite v. Chicago Transit Authority*, 157 Ill. App. 3d 616, 510 N.E.2d 1176 (1987). Although it is a jury question whether Cervantes' actions were the proximate cause of plaintiff's damages (*Illinois Bell Telephone Co. v. Purex Corp.*, 90 Ill. App. 3d 690, 697, 413 N.E.2d 106 (1980)), the court has the power to direct a verdict when all of the evidence, when viewed in its aspect most favorable to the

opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504 (1967). Thus, if plaintiff fails to prove proximate cause, he has not sustained his burden of making a *prima facie* case and a directed verdict is proper. *Kimbrough v. Jewel Cos.*, 92 Ill. App. 3d 813, 416 N.E.2d 328 (1981).

Defendants argue they are entitled to judgment notwithstanding the verdict because plaintiff presented no expert or eyewitness evidence to establish that Cervantes' alleged negligence was the proximate cause of decedent's death and proximate cause cannot be inferred from circumstantial evidence unless it excludes all other possible causes for the accident. Anything less, they contend, amounts to impermissible conjecture, guess or speculation as to the cause of decedent's death. We disagree.

■ While defendants are correct in their assertion that liability cannot be predicated upon surmise or conjecture as to the cause of injury (*Monaghan v. DiPaulo Construction Co.*, 140 Ill. App. 3d 921, 489 N.E.2d 409 (1986)), it can be established where there is a reasonable certainty that defendants' actions caused the injury (*Whitman v. Lopatkiewicz*, 152 Ill. App. 3d 332, 338, 504 N.E.2d 243 (1987)). And, despite defendants' protestations to the contrary, reasonable certainty may be established by inference from circumstantial evidence (*McCullough v. Gallaher & Speck*, 254 Ill. App. 3d 941, 949, 627 N.E.2d 202, 208 (1993)), which need not exclude all other possible inferences or support only one logical conclusion but, rather, must justify an inference of probability, not mere possibility. *McCullough*, 254 Ill. App. 3d at 949, 627 N.E.2d at 208; *Consolino v. Thompson*, 127 Ill. App. 3d 31, 33, 468 N.E.2d 422, 424 (1984).

We find the case of *McKanna v. Duo-Fast Corp.*, 161 Ill. App. 3d 518, 515 N.E.2d 157 (1987), to be instructive. In *McKanna*, plaintiff alleged decedent's injuries had been caused by a fall from a ladder to a ceiling hatch that permitted access to the roof. At trial, evidence was introduced regarding certain alleged defects in the ladder and a preoccurrence witness testified he saw decedent place his left hand on the hatch and then turn around in order to descend the ladder from the roof. The jury returned a verdict for plaintiff. Defendant appealed, arguing plaintiff had failed to prove proximate cause. We affirmed, holding that the trial testimony detailing decedent's actions immediately prior to the incident allowed a reasonable inference that decedent had intended to descend the ladder, that the ladder was defective, and that decedent was a safety-conscious worker and was careful on ladders. 161 Ill. App. 3d at 527-28, 515 N.E.2d at 164.

Here, as in *McKanna*, a preoccurrence witness testified he saw

decedent riding in the street between the truck and the curb and that decedent appeared to lose his balance when the truck came too close. In addition, the record indicates the truck came to a stop after the accident without having swerved either left or right and that it was 1 to 1¹/₂ feet from the curb. Based upon common experience, we believe the jury could reasonably infer from the foregoing evidence that Cervantes was driving his truck too close to the curb, crowding decedent's path, and that this was the probable and proximate cause of decedent's death. See *McCullough v. Gallaher & Speck*, 254 Ill. App. 3d 941, 949, 627 N.E.2d 202, 208 (1993); *Consolino v. Thompson*, 127 Ill. App. 3d 31, 33, 468 N.E.2d 422 (1984).

■ Defendants nevertheless argue evidence that decedent was unfamiliar with the route, that decedent had been ill and thus was unsteady on his bicycle, and that there was debris in the road near the accident scene supported a reasonable inference that the cause of decedent's death was something other than Cervantes' allegedly negligent driving. Accordingly, they contend the jury should not have been permitted to infer Cervantes' alleged negligence was the proximate cause of decedent's death. We disagree.

The mere possibility that decedent's fall was caused by something other than Cervantes' negligence does not entitle defendants to a verdict in their favor (*McCullough*, 254 Ill. App. 3d at 949, 627 N.E.2d at 208; *Consolino*, 127 Ill. App. 3d at 33, 468 N.E.2d at 424); it was for a jury to decide whether decedent's unfamiliarity with the road, his prior illness, the truck, or some combination of the three caused decedent's accident. See *Wagner v. City of Chicago*, 254 Ill. App. 3d 842, 847, 626 N.E.2d 1227, 1232 (1993) (jury question whether plaintiff's alleged speeding, defendant's alleged negligence in failing to post proper road signs, or both proximately caused automobile collision). Nor does defendants' theory that decedent was thrown from his bicycle when it came into contact with road debris entitle them to judgment notwithstanding the verdict; this theory was unsupported because no evidence was presented that decedent's bicycle ever came into contact with the road debris.

Defendants' reliance upon *Monaghan*, 140 Ill. App. 3d 921, 489 N.E.2d 409, *Tarulis v. Prassas*, 236 Ill. App. 3d 56, 603 N.E.2d 13 (1992), and *Waite v. Chicago Transit Authority*, 157 Ill. App. 3d 616, 510 N.E.2d 1176 (1987), to support their argument plaintiff failed to prove proximate cause is misplaced. In *Monaghan*, we affirmed the trial court's grant of summary judgment in favor of defendants because the plaintiff's theory that he was thrown from his motorcycle when it hit an unlighted median strip was unsupported. No evidence had been introduced to show plaintiff's motorcycle struck the median.

In *Tarulis*, we reversed a jury verdict in favor of the injured plaintiff because plaintiff's theory that defendant's failure to make a parking lot wheel stop more visible caused his auto accident was unsupported. No evidence had been introduced to show plaintiff was unable to see it. Similarly, in *Waite* we affirmed the trial court's grant of summary judgment in favor of defendant because the pedestrian-plaintiff's theory a four-inch post supporting a construction canopy obstructed his vision of oncoming traffic was unsupported. No evidence was introduced to show plaintiff had looked in the direction of the post before entering the crosswalk. See also *Snell v. Village of University Park*, 185 Ill. App. 3d 973, 542 N.E.2d 49 (1989) (jury verdict for plaintiff reversed on appeal because plaintiff's theory she was thrown from bicycle when it came into contact with an allegedly defective curb was unsupported. No evidence had been introduced to show plaintiff's bicycle had come into contact with curb).

Plaintiff in the case at bar asserts that the jury could reasonably have inferred that decedent fell because Cervantes drove his truck too close to the curb, crowding the decedent bicyclist and causing him to lose his balance. Following the logic of *Monaghan, Tarulis,* and *Waite*, this inference would be conjecture, guess or speculation if no evidence was introduced to show the truck crowded decedent's path. As previously noted, such evidence was introduced.

Defendants' reliance on *Leavitt v. Farwell Tower Ltd. Partnership*, 252 Ill. App. 3d 260, 625 N.E.2d 48 (1993), is equally misplaced. In *Leavitt*, plaintiff alleged defective elevator doors caused decedent to fall down an elevator shaft to his death. The affidavits, depositions, admissions, exhibits, and pleadings on file indicated decedent's body was discovered in the pit of an elevator shaft, the hoistway door on the second floor was open at the time in issue, the elevator cab was stuck between the second and third floors, mail addressed to the decedent was stacked near the second-floor elevator door, and it was only a four-foot drop from the first-floor landing to the pit of the elevator shaft. The trial court granted defendant's motion for summary judgment. Plaintiff appealed, arguing the evidence on file supported a reasonable inference that decedent fell down the shaft because the elevator doors malfunctioned. We affirmed, holding that the circumstantial evidence must justify an inference of probability regarding cause of death, as opposed to possibility, and that such probability cannot be inferred when a contrary cause could be inferred with equal certainty from the same evidence. We reasoned that under the given facts it was equally likely decedent slipped, fell while reaching into the shaft, jumped or ran into the shaft, or forced the elevator doors open himself. *Leavitt*, 252 Ill. App. 3d at 267-68, 625 N.E.2d at 54.

Here, unlike in *Leavitt*, the testimony of preoccurrence witnesses justifies an inference of probability that Cervantes' driving caused decedent's death. *McKanna*, 161 Ill. App. 3d 518, 515 N.E.2d 157 (discussed *supra*).

■ Defendants next argue they are entitled to judgment *n.o.v.* because the jury's verdict is against the manifest weight of the evidence. In support of their argument, defendants point to the testimony of David Prusinski and Denise Kuttler, the coroner's report and certain physical evidence at the scene that they claim demonstrates decedent was southbound turning east onto Addison rather than eastbound alongside Cervantes' truck, and that a southbound station wagon knocked decedent under the truck as it finished crossing the intersection.

Prusinski testified he saw decedent riding his bicycle southbound on California along the left side of the street against northbound traffic. Prusinski further testified that when decedent reached the intersection, a southbound station wagon turning left (east) onto California hit decedent, tossed him under Cervantes' truck somewhere between the rear tandems, then proceeded southeast. Defendants emphasize that Prusinski was the only witness who testified he saw the impact between Cervantes' truck and the decedent.

Denise Kuttler testified the eastbound bicyclist was approximately 5 feet 7 inches tall, weighed between 135 and 145 pounds, and had blonde hair whereas the coroner's report and other witnesses indicated decedent was only slightly over five feet tall, weighed 109 pounds, and had brown hair.

According to physical evidence at the scene, decedent's body was facing a north-northwesterly direction some four to five feet from the curb and slightly more than one car length east of the crosswalk. No blood or other body materials were found on the right side of the truck; however, blood and brain matter were found underneath the truck between the rear tandems of the trailer on the right side. Blood was also found on the south curb of Addison, and brain matter was found some 18 feet from the crosswalk.

Defendants argue the testimony of Prusinski and Kuttler, combined with the location and position of the physical evidence, entitles them to judgment notwithstanding the verdict because it supports only one conclusion: A boy traveling south on California was hit and knocked under the truck. We disagree.

A verdict is not against the manifest weight of the evidence unless the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence. *Villa v. Crown Cork & Seal Co.*, 202 Ill. App. 3d 1082, 1089,

560 N.E.2d 969 (1990). This standard must be applied, keeping in mind that it is for the trier of fact to judge the credibility of witnesses. *Maple v. Gustafson*, 151 Ill. 2d 445, 452-54, 603 N.E.2d 508, 511-13 (1992).

Having found for plaintiff, it is apparent that to the extent the testimony of Prusinski and Kuttler conflicted with plaintiff's evidence and theory of the case, the jury did not believe it. Furthermore, defendants provided no accident reconstruction expert who could testify that the position of the physical evidence supported only defendants' theory of the case. Having failed to provide such expert testimony, defendants will not now be heard to complain that, left to its own devices, the jury came to a different conclusion.

■ Defendants finally argue that, even assuming decedent was the eastbound bicyclist, plaintiff failed to prove Cervantes' alleged negligence caused decedent's death and the jury's verdict is against the manifest weight of the evidence because the evidence demonstrates that decedent's own negligence was the proximate cause of his death. In support of their argument, defendants point to the testimony of Renee Maser and Niksa Ivancevic.

Maser testified that she was driving eastbound on Addison approximately three car lengths behind the truck and first saw the eastbound bicyclist on the southeast corner of the intersection even with the middle of the trailer. She further testified:

> "Shortly after I noticed the boy on the bike, I noticed his arm reaching up and to, it looked to me as if he was trying to hang onto something on the truck."

Ivancevic testified that just prior to the accident he was waiting for an eastbound bus on the southwest corner of the intersection on Addison. He further testified he saw the eastbound bicyclist with his hands raised in the direction of the truck.

Defendants contend the foregoing evidence both undercuts plaintiff's theory of the case and supports their alternative theory that the decedent was attempting to grab hold of the truck in order to hitch a ride and that this allegedly negligent act was the proximate cause of his death. We disagree.

> " '[T]he presence of some evidence of a fact which, when viewed alone may seem substantial, does not always, when viewed in the context of all the evidence, retain such significance. As the light from a lighted candle in a dark room seems substantial but disappears when the lights are turned on, so may weak evidence fade when the proof is viewed as a whole.' " (Emphasis omitted.) *Newlin v. Foresman*, 103 Ill. App. 3d 1038, 1044-45, 432 N.E.2d 319, 324 (1982), quoting *Pedrick*, 37 Ill. 2d at 504-05, 229 N.E.2d at 510.

Although defendants' theory of the case is possible, when viewing the testimony of Maser and Ivancevic in context, we believe decedent's actions are as easily explained as an unsuccessful attempt to regain his balance, or a futile attempt to fend off the truck, as they would be to grab hold of the truck in order to hitch a ride.

For all of the foregoing reasons, we cannot say that the jury's verdict was against the manifest weight of the evidence. Even assuming that it was, a judgment *n.o.v.* may not be granted merely because a verdict is against the manifest weight of the evidence. Rather, a judgment *n.o.v.* requires defendants to meet the more stringent *Pedrick* standard. *Maple v. Gustafson*, 151 Ill. 2d at 454, 603 N.E.2d at 512. And where, as here, the assessment of credibility of witnesses and the determination regarding conflicting evidence were decisive to the outcome, it cannot be said that the inferences that might reasonably be drawn from the evidence so overwhelmingly favor defendants that no contrary verdict could ever stand. *Maple v. Gustafson*, 151 Ill. 2d at 454, 603 N.E.2d at 512. The fact that the circumstantial evidence did not exclude the possibility that decedent fell on debris in the road near the accident scene or that decedent fell because he was attempting to grab hold of the truck in an effort to hitch a ride does not alter this outcome. *McCullough*, 254 Ill. App. 3d at 949, 627 N.E.2d at 208; *Consolino*, 127 Ill. App. 3d at 33, 468 N.E.2d at 424. Accordingly, we affirm the trial court's denial of defendants' motion for a judgment notwithstanding the verdict.

Because we find any possible error in the closing argument of plaintiff's attorney was cured by defendants' objection and the trial court's instruction to disregard, we reverse the trial court's grant of defendants' motion for a new trial. Because we find plaintiff proved the element of proximate cause, we affirm the trial court's denial of defendants' motion for a judgment notwithstanding the verdict. In light of the foregoing, and because we find it was not against the manifest weight of the evidence, we reinstate the jury verdict.

Finally, both plaintiffs and defendants raised procedural and evidentiary issues to be addressed by this court only in the event the order for a new trial was affirmed. Because we have reversed the trial court's order for a new trial and reinstated the jury verdict, we need not address the issues so raised.

Affirmed in part; reversed in part and jury verdict reinstated.

CAHILL and THEIS, JJ., concur.