FOURTH DIVISION
 October 17, 1996


No. 1-93-4264

ZYGMUNDT WOJTOWICZ, as Special
Administrator of the Estate of Tomasz
Golinski, Deceased,

 Plaintiff-Appellant and Cross
 Appellee,

 v.

PAUL CERVANTES and HOLMES FREIGHT LINES,
INC., 

 Defendants-Appellees and Cross
 Appellants.)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)Appeal from the
Circuit Court of
Cook County.










Honorable
Howard Miller,
Judge Presiding.

 JUSTICE O'BRIEN delivered the opinion of the court:

 Plaintiff's cause of action arises from a fatal truck-bicycle
accident occurring on May 29, 1987, at the intersection of Addison
and California Streets in Chicago. Defendant Paul Cervantes, a
driver for Holmes Freight Lines (Holmes), crushed plaintiff's
decedent, 15-year-old bicyclist Tomasz Golinski, under the right
rear tandem tires of his semi tractor-trailer. Plaintiff filed a
wrongful death complaint against Cervantes and Holmes on June 17,
1987. Following a jury trial, plaintiff obtained a verdict against
defendants. The defendants filed a post-trial motion seeking,
inter alia, judgment notwithstanding the jury's verdict or,
alternatively, a new trial. Citing a statement made by plaintiff's
counsel during closing argument regarding special interrogatories,
the trial court granted defendants' motion for a new trial. 
 Plaintiff appeals from the trial court's interlocutory order
pursuant to Supreme Court Rule 306 (134 Ill. 2d R. 306). Holmes
cross-appeals, alleging the trial court erred in failing to grant
its post-trial motion for judgment notwithstanding the verdict and
in refusing to grant its pre-trial motion to dismiss for lack of
due diligence in service of process. 
OPINION
I. Service of Process

 The accident at issue in this case occurred on May 29, 1987,
and plaintiff timely filed suit on June 17, 1987. According to the
return of service filed with the court clerk, defendant Cervantes
was personally served on June 20, 1987. According to a statement
by its agent for receipt of service of process, defendant Holmes
was served on June 22, 1987; however, no return of service was
filed. More than two years later, on September 29, 1989, summons
was again served on Holmes and proof of service properly filed with
the court on October 11, 1989.
 Citing Werner v. W.H. Shons Co., 341 Ill. 478, 486, 173 N.E.
486, 490 (1930), Holmes contends that until plaintiff's affidavit
of compliance is filed with the clerk, the trial court can have no
basis for determining whether service was proper and therefore the
trial court erred in refusing to grant its pretrial motion to
dismiss for lack of due diligence in service of process. We
disagree. 
 Supreme Court Rule 103(b) provides in pertinent part:
 "If the plaintiff fails to exercise reasonable diligence
 to obtain service prior to the expiration of the
 applicable statute of limitations, the action as a whole
 or as to any unserved defendant may be dismissed without
 prejudice. If the failure to exercise reasonable
 diligence to obtain service occurs after the expiration
 of the applicable statute of limitations, the dismissal
 shall be with prejudice." 134 Ill. 2d R. 103(b).

 However, Supreme Court Rule 102(d) clearly states that
"[f]ailure of the officer or other person to return the summons or
file proof of service does not invalidate the summons or the
service thereof, if had." 134 Ill. 2d R. 102(d). Supreme Court
Rule 12(b)(1) further provides that service may be proved by
written acknowledgement signed by the person served. 145 Ill. 2d
R. 12(b)(1). There is no requirement that the acknowledgement be
in the form of a formal affidavit. 
 Plaintiff's response to defendant's motion to dismiss was
filed with the court on December 29, 1989. Attached thereto were
two exhibits relevant to the Rule 103(b) issue. Exhibit A was a
letter dated December 19, 1989, to plaintiff's attorney from CT
Corporation System, Holmes' registered agent for receipt of service
of process. Exhibit B was an undated document entitled
"Affidavit." Both documents were signed by CT Corporation System's
employee Debra Schull and stated that she had received service of
process for Holmes regarding the instant action on June 22, 1987. 
 Accordingly, on February 8, 1990, when the trial court decided
Holmes' Rule 103(b) motion, it had before it a binding admission by
Holmes' agent that process had in fact been received on June 22,
1987. Holmes' motion to dismiss was therefore properly denied. 
See Burton v. Autumn Grain Transport, Inc., 222 Ill. App. 3d 755,
757, 584 N.E.2d 377 (1991). 
II. Closing Arguments
 Following a two-week trial, the jury returned a verdict
awarding plaintiff $2,533,538 for the wrongful death of Tomasz
Golinski. On May 11, 1993, the circuit court entered a judgment on
the jury's verdict. In its post-trial motion, defendants sought a
new trial, in part, on grounds the following passage from
plaintiff's closing argument impermissibly advised the jury to
harmonize its general verdict with its answers to the special
interrogatories. The comment at issue was as follows:
 "MR. OLSON: Now, there will be instructions that ask you
 to consider whether Tom was comparatively negligent, and
 I submit to you that Tom was not. There will be what's
 called a special interrogatory, questions that you'll
 have to answer in addition to going through the verdict
 forms.

 I submit to you that they should be answered in a very
 particular manner because if they're inconsistent with
 the general verdict, there's a big problem.

 MR. LOWERY: Objection, your Honor.

 THE COURT: Sustained.

 MR. LOWERY: Ask that the jury disregard it.

 THE COURT: Disregard it." (Emphasis added.)

 Following closing arguments, the special interrogatories were
given to the jury over plaintiff's objection. They asked the jury
to decide (1) whether plaintiff proved the defendant negligent, (2)
whether the defendant proved that plaintiff's decedent was
contributorily negligent, and (3) whether defendants proved that
plaintiff's contributory negligence exceeded 50%. Answers to the
foregoing questions were generally consistent with the general
verdict form, which held for plaintiff's decedent and attributed 
33 % comparative negligence to plaintiff's decedent.
 In granting defendants' motion for a new trial, the trial
court reasoned that there was "error" in counsel's statement to the
jury in the closing arguments regarding the special interrogatory
on the issue of comparative negligence, that the statement should
not have been permitted to stand, and that the error was per se
reversible.
 On appeal, plaintiff argues the grant of a new trial
constituted an abuse of discretion because the closing argument
comment by plaintiff's counsel did not constitute reversible error. 
In addition, both plaintiff and defendants raise procedural and
evidentiary issues to be addressed by this court in the event the
order for a new trial is affirmed. 
 An attorney's remark to the jury concerning special
interrogatories is per se reversible error where it advises the
jury of their effect upon the general verdict. Sommese v. Maling
Brothers, Inc., 36 Ill. 2d 263, 267-68, 222 N.E.2d 468, 471 (1966). 
However, a closing argument comment that merely requests that the
jury answer its special interrogatories "consistent" with the
verdict is not per se reversible error providing a curative
instruction is given. See O'Neil v. Continental Bank, N.A., 278
Ill. App. 3d 327, 662 N.E.2d 489 (1996) (collecting cases).
 We have reviewed the court's decision in Sommese and its
progeny and determined that in cases of per se reversible error 
there are two common scenarios. The jury was told either that the
special interrogatory superseded the general verdict (Sutton v.
Peoples Gas Light & Coke Co., 119 Ill. App. 2d 471, 256 N.E.2d 19
(1970)), or that if plaintiff was to recover money damages, the
special interrogatory had to be answered in a particular way (Massa
v. G. Helmkamp Excavating & Trucking Co., 145 Ill. App. 3d 60, 67-
68, 495 N.E.2d 648 (1986); Batteast v. Wyeth Laboratories, Inc.,
137 Ill. 2d 175, 560 N.E.2d 315 (1990), Lozado v. City of Chicago,
279 Ill. App. 3d 285, 664 N.E.2d 333 (1996)). In cases that found
no per se reversible error, there are also two common scenarios. 
The jury was told either that answering "no" to the particular
special interrogatory was saying the plaintiff was at fault and
shouldn't recover (Moore v. Checker Taxi Co., 133 Ill. App. 2d 588,
592, 273 N.E.2d 514 (1971); Burns v. Howell Tractor & Equipment
Co., 45 Ill. App. 3d 838, 848, 360 N.E.2d 377 (1977); Kosinski v.
Inland Steel Co., 192 Ill. App. 3d 1017, 1028, 549 N.E.2d 784
(1989); Blevins v. Inland Steel Co., 180 Ill. App. 3d 286, 291, 535
N.E.2d 972 (1989)), or that the special interrogatory and general
verdict should be consistent, coupled with a curative isntruction
reminding the jury to answer the special interrogatory based upon
the evidence (O'Neil, 278 Ill. App. 3d 327, 662 N.E.2d 489). 
 While, as the court in Blevins recognized, the distinction may
seem slight, it is an important one. In cases of per se reversible
error, the offensive comments were outcome driven. Each jury was
informed that if it wanted the plaintiff to get money, the special
interogatory controlled (or that it had to be answered in a certain
way). In cases of no per se reversible error, each jury was asked
to answer the special interrogatory based upon the evidence. We
find no case other than O'Neil where the single error alleged on
appeal was that counsel's closing argument asked the jury to
harmonize its special interrogatory response to its general
verdict. As previously noted, the O'Neil case held this type of
error could be cured by appropriate instructions to the jury.
 Here, as in O'Neil, the single error alleged on appeal is that
counsel for plaintiff informed the jury that if the special
interrogatories were "inconsistent with the general verdict,
there's a big problem." An objection was made, sustained, and the
jury informed to disregard. 
 Defendants nevertheless argue that counsel's comment
suggesting "a big problem" informed the jury of the purpose and
legal effect of the special interrogatories. We disagree. 
Although the comment was inadvisable, it cannot be said to have
been result driven in the same way that a comment stating "if you
want plaintiff to win, do 'X'" is, nor can it be said to have
patently informed the jury that the interrogatories superseded the
general verdict. In this context, "big problem" could have any
number of interpretations. There is no suggestion in the record
that the jury improperly considered the remark during its
deliberations. Indeed, the jury's verdict itself demonstrates that
counsel's comment was of no effect and that the grant of a new
trial was an abuse of discretion. 
 The jury's verdict and its answers to the special
interrogatories indicate that the jury found defendants negligent
(rejecting defendants' argument decedent was tossed under
Cervantes' truck by a hit-and-run driver) and attributed some
negligence to plaintiff's decedent (rejecting plaintiff's argument
there was no comparative negligence whatsoever). Moreover, the
percentage of fault assigned to plaintiff's decedent by the jury
was substantially less than 50%, further supporting the conclusion
that it had not, in fact, answered the interrogatories merely to
preserve its general verdict, but rather had answered them upon the
evidence presented. Accordingly, we conclude that counsel's
comment did not result in prejudice to the defendants. See Thorsen
v. City of Chicago, 74 Ill. App. 3d 98, 392 N.E.2d 716 (1979);
Lozado, 279 Ill. App. 3d 285, 664 N.E.2d 333. 
 After carefully reviewing the court's decision in Sommese and
considering the relevant cases from our own court, we find no per
se reversible error here, and what error did occur was promptly
cured by defendants' objection and the trial court's instruction to
disregard. Counsel's single comment was far less serious than the
statement made to the jury in Sommese or any case that has followed
it. 
III. Judgment Notwithstanding the Verdict
 Defendants cross-appeal arguing they were entitled, not merely
to a new trial, but rather to a judgment notwithstanding the
verdict because (1) plaintiff failed to prove proximate cause and
(2) the jury verdict is against the manifest weight of the
evidence. We disagree.
 A negligence action requires proof of duty, breach, injury and
causation. Waite v. Chicago Transit Authority, 157 Ill. App. 3d
616, 510 N.E.2d 1176 (1987). Although it is a jury question
whether Cervantes' actions were the proximate cause of plaintiff's
damages (Illinois Bell Telephone Co. v. Purex Corp., 90 Ill. App.
3d 690, 697, 413 N.E.2d 106 (1980)), the court has the power to
direct a verdict when all of the evidence, when viewed in its
aspect most favorable to the opponent, so overwhelmingly favors the
movant that no contrary verdict based on the evidence could ever
stand. Pedrick v. Peoria & Eastern R.R. Co., 37 Ill. 2d 494, 229
N.E.2d 504 (1967). Thus, if plaintiff fails to prove proximate
cause, he has not sustained his burden of making a prima facie case
and a directed verdict is proper. Kimbrough v. Jewel Cos., 92 Ill.
App. 3d 813, 416 N.E.2d 328 (1981). 
 Defendants argue they are entitled to judgment notwithstanding
the verdict because plaintiff presented no expert or eyewitness
evidence to establish that Cervantes' alleged negligence was the
proximate cause of decedent's death and proximate cause cannot be
inferred from circumstantial evidence unless it excludes all other
possible causes for the accident. Anything less, they contend,
amounts to impermissible conjecture, guess or speculation as to the
cause of decedent's death. We disagree.
 While defendants are correct in their assertion that liability
cannot be predicated upon surmise or conjecture as to the cause of
injury (Monaghan v. DiPaulo Construction Co., 140 Ill. App. 3d 921,
489 N.E.2d 409 (1986)), it can be established where there is a
reasonable certainty that defendant's actions caused the injury
(Whitman v. Lopatkiewicz, 152 Ill. App. 3d 332, 338, 504 N.E.2d 243
(1987)). And, despite defendants' protestations to the contrary,
reasonable certainty may be established by inference from
circumstantial evidence (McCullough v. Gallaher & Speck, 254 Ill.
App. 3d 941, 949, 627 N.E.2d 202, 208 (1993)), which need not
exclude all other possible inferences or support only one logical
conclusion, but rather must justify an inference of probability,
not mere possibility. McCullough, 254 Ill. App. 3d at 949, 627
N.E.2d at 208; Consolino v. Thompson, 127 Ill. App. 3d 31, 33, 468
N.E.2d 422, 424 (1984). 
 We find the case of McKanna v. Duo-Fast Corp., 161 Ill. App.
3d 518, 515 N.E.2d 157 (1987), to be instructive. In McKanna,
plaintiff alleged decedent's injuries had been caused by a fall
from a ladder to a ceiling hatch that permitted access to the roof. 
At trial, evidence was introduced regarding certain alleged defects
in the ladder and a preoccurrence witness testified he saw decedent
place his left hand on the hatch and then turn around in order to
descend the ladder from the roof. The jury returned a verdict for
plaintiff. Defendant appealed, arguing plaintiff had failed to
prove proximate cause. We affirmed, holding that the trial
testimony detailing decedent's actions immediately prior to the
incident allowed a reasonable inference that decedent had intended
to descend the ladder, that the ladder was defective, and that
decedent was a safety-conscious worker and was careful on ladders. 
161 Ill. App. 3d at 527-28, 515 N.E.2d at 164.
 Here, as in McKanna, a preoccurrence witness testified he saw
decedent riding in the street between the truck and the curb and
that decedent appeared to lose his balance when the truck came too
close. In addition, the record indicates the truck came to a stop
after the accident without having swerved either left or right and
that it was 1 to 1« feet from the curb. Based upon common
experience, we believe the jury could reasonably infer from the
foregoing evidence that Cervantes was driving his truck too close
to the curb, crowding decedent's path, and that this was the
probable and proximate cause of decedent's death. See McCullough
v. Gallaher & Speck, 254 Ill. App. 3d 941, 949, 627 N.E.2d 202, 208
(1993); Consolino v. Thompson, 127 Ill. App. 3d 31, 33, 468 N.E.2d
422 (1984).
 Defendants nevertheless argue evidence that decedent was
unfamiliar with the route, that decedent had been ill and thus was
unsteady on his bicycle, and that there was debris in the road near
the accident scene supported a reasonable inference that the cause
of decedent's death was something other than Cervantes' allegedly
negligent driving. Accordingly, they contend the jury should not
have been permitted to infer Cervantes' alleged negligence was the
proximate cause of decedent's death. We disagree. 
 The mere possibility that decedent's fall was caused by
something other than Cervantes' negligence does not entitle
defendants to a verdict in their favor (McCullough, 254 Ill. App.
3d at 949, 627 N.E.2d at 208; Consolino, 127 Ill. App. 3d at 33,
468 N.E.2d at 424); it was for a jury to decide whether decedent's
unfamiliarity with the road, his prior illness, the truck, or some
combination of the three caused decedent's accident. See Wagner v.
City of Chicago, 254 Ill. App. 3d 842, 847, 626 N.E.2d 1227, 1232
(1993) (jury question whether plaintiff's alleged speeding,
defendant's alleged negligence in failing to post proper road
signs, or both proximately caused automobile collision). Nor does
defendants' theory that decedent was thrown from his bicycle when
it came into contact with road debris entitle them to judgment
notwithstanding the verdict; this theory was unsupported because no
evidence was presented that decedent's bicycle ever came into
contact with the road debris.
 Defendants' reliance upon Monaghan, 140 Ill. App. 3d 921, 489
N.E.2d 409, Tarulis v. Prassas, 236 Ill. App. 3d 56, 603 N.E.2d 13
(1992), and Waite v. Chicago Transit Authority, 157 Ill. App. 3d
616, 510 N.E.2d 1176 (1987), to support their argument plaintiff
failed to prove proximate cause is misplaced. In Monaghan, we
affirmed the trial court's grant of summary judgment in favor of
defendants because the plaintiff's theory that he was thrown from
his motorcycle when it hit an unlighted median strip was
unsupported. No evidence had been introduced to show plaintiff's
motorcycle struck the median. In Tarulis, we reversed a jury
verdict in favor of the injured plaintiff because plaintiff's
theory that defendant's failure to make a parking lot wheel stop
more visible caused his auto accident was unsupported. No evidence
had been introduced to show plaintiff was unable to see it. 
Similarly, in Waite we affirmed the trial court's grant of summary
judgment in favor of defendant because the pedestrian-plaintiff's
theory a four-inch post supporting a construction canopy obstructed
his vision of oncoming traffic was unsupported. No evidence was
introduced to show plaintiff had looked in the direction of the
post before entering the crosswalk. See also Snell v. Village of
University of Park, 185 Ill. App. 3d 973, 542 N.E.2d 49 (1989)
(jury verdict for plaintiff reversed on appeal because plaintiff's
theory she was thrown from bicycle when it came into contact with
an allegedly defective curb was unsupported. No evidence had been
introduced to show plaintiff's bicycle had come into contact with
curb). 
 Plaintiff in the case at bar asserts that the jury could
reasonably have inferred that decedent fell because Cervantes drove
his truck too close to the curb, crowding the decedent bicyclist
and causing him to lose his balance. Following the logic of
Monaghan, Tarulis, and Waite, this inference would be conjecture,
guess or speculation if no evidence was introduced to show the
truck crowded decedent's path. As previously noted, such evidence
was introduced.
 Defendant's reliance on Leavitt v. Farwell Tower Ltd.
Partnership, 252 Ill. App. 3d 260, 625 N.E.2d 48 (1993), is equally
misplaced. In Leavitt, plaintiff alleged defective elevator doors
caused decedent to fall down an elevator shaft to his death. The
affidavits, depositions, admissions, exhibits, and pleadings on
file indicated decedent's body was discovered in the pit of an
elevator shaft, the hoistway door on the second floor was open at
the time in issue, the elevator cab was stuck between the second
and third floors, mail addressed to the decedent was stacked near
the second-floor elevator door, and it was only a four-foot drop
from the first-floor landing to the pit of the elevator shaft. The
trial court granted defendant's motion for summary judgment. 
Plaintiff appealed, arguing the evidence on file supported a
reasonable inference that decedent fell down the shaft because the
elevator doors malfunctioned. We affirmed, holding that the
circumstantial evidence must justify an inference of probability
regarding cause of death, as opposed to possibility, and that such
probability cannot be inferred when a contrary cause could be
inferred with equal certainty from the same evidence. We reasoned
that under the given facts it was equally likely decedent slipped,
fell while reaching into the shaft, jumped or ran into the shaft,
or forced the elevator doors open himself. Leavitt, 252 Ill. App.
3d at 267-68, 625 N.E.2d at 54. 
 Here, unlike in Leavitt, the testimony of preoccurrence
witnesses justifies an inference of probability that Cervantes'
driving caused decedent's death. McKanna, 161 Ill. App. 3d 518,
515 N.E.2d 157 (discussed supra).
 Defendants next argue they are entitled to judgment n.o.v.
because the jury's verdict is against the manifest weight of the
evidence. In support of their argument, defendants point to the
testimony of David Prusinski and Denise Kuttler, the coroner's
report and certain physical evidence at the scene which they claim
demonstrates decedent was southbound turning east onto Addison
rather than eastbound alongside Cervantes' truck, and that a
southbound station wagon knocked decedent under the truck as it
finished crossing the intersection. 
 Prusinski testified he saw decedent riding his bicycle
southbound on California along the left side of the street against
northbound traffic. Prusinski further testified that when decedent
reached the intersection, a southbound station wagon turning left
(east) onto California hit decedent, tossed him under Cervantes'
truck somewhere between the rear tandems, then proceeded southeast. 
Defendants emphasize that Prusinski was the only witness who
testified he saw the impact between Cervantes' truck and the
decedent.
 Denise Kuttler testified the eastbound bicyclist was
approximately 5 feet 7 inches tall, weighed between 135 and 145
pounds, and had blonde hair whereas the coroner's report and other
witnesses indicated decedent was only slightly over five feet tall,
weighed 109 pounds, and had brown hair. 
 According to physical evidence at the scene, decedent's body
was facing a north-northwesterly direction some four to five feet
from the curb and slightly more than one car length east of the
crosswalk. No blood or other body materials were found on the
right side of the truck; however, blood and brain matter were found
underneath the truck between the rear tandems of the trailer on the
right side. Blood was also found on the south curb of Addison, and
brain matter was found some 18 feet from the crosswalk.
 Defendants argue the testimony of Prusinski and Kuttler
combined with the location and position of the physical evidence
entitle them to judgment notwithstanding the verdict because it
supports only one conclusion: A boy traveling south on California
was hit and knocked under the truck. We disagree. 
 A verdict is not against the manifest weight of the evidence
unless the opposite conclusion is clearly evident or where the
findings of the jury are unreasonable, arbitrary and not based upon
any of the evidence. Villa v. Crown Cork & Seal Co., 202 Ill. App.
3d 1082, 1089, 560 N.E.2d 969 (1990). This standard must be
applied, keeping in mind that it is for the trier of fact to judge
the credibility of witnesses. Maple v. Gustafson, 151 Ill. 2d 445,
452-54, 603 N.E.2d 508, 511-13 (1992). 
 Having found for plaintiff, it is apparent that to the extent
the testimony of Prusinski and Kuttler conflicted with plaintiff's
evidence and theory of the case, the jury did not believe it. 
Furthermore, defendants provided no accident reconstruction expert
who could testify that the position of the physical evidence
supported only defendants' theory of the case. Having failed to
provide such expert testimony, defendants will not now be heard to
complain that, left to its own devices, the jury came to a
different conclusion. 
 Defendants finally argue that, even assuming decedent was the
eastbound bicyclist, plaintiff failed to prove Cervantes' alleged
negligence caused decedent's death and the jury's verdict is
against the manifest weight of the evidence because the evidence
demonstrates that decedent's own negligence was the proximate cause
of his death. In support of their argument, defendants point to
the testimony of Renee Maser and Niksa Ivancevic. 
 Maser testified that she was driving eastbound on Addison
approximately three car lengths behind the truck and first saw the
eastbound bicyclist on the southeast corner of the intersection
even with the middle of the trailer. She further testified:
 "Shortly after I noticed the boy on the bike, I noticed
 his arm reaching up and to, it looked to me as if he was
 trying to hang onto something on the truck."

 Ivancevic testified that just prior to the accident he was
waiting for an eastbound bus on the southwest corner of the
intersection on Addison. He further testified he saw the eastbound
bicyclist with his hands raised in the direction of the truck.
 Defendants contend the foregoing evidence both undercuts
plaintiff's theory of the case and supports their alternative
theory that the decedent was attempting to grab hold of the truck
in order to hitch a ride and that this allegedly negligent act was
the proximate cause of his death. We disagree. 
 "[T]he presence of some evidence of a fact which, when viewed
 alone may seem substantial, does not always, when viewed in
 the context of all the evidence, retain such significance. As
 the light from a lighted candle in a dark room seems
 substantial but disappears when the lights are turned on, so
 may weak evidence fade when proof is viewed as a whole." 
 (Emphasis omitted.)

Newlin v. Foresman, 103 Ill. App. 3d 1038, 1044-45, 432 N.E.2d 319,
324 (1982), quoting Pedrick 37 Ill. 2d at 504-05, 229 N.E.2d at
510. Although defendants' theory of the case is possible, when
viewing the testimony of Maser and Ivancevic in context, we believe
decedent's actions are as easily explained as an unsuccessful
attempt to regain his balance, or a futile attempt to fend off the
truck, as they would be to grab hold of the truck in order to hitch
a ride. 
 For all of the foregoing reasons, we cannot say that the
jury's verdict was against the manifest weight of the evidence. 
Even assuming that it was, a judgment n.o.v. may not be granted
merely because a verdict is against the manifest weight of the
evidence. Rather, a judgment n.o.v. requires defendants to meet
the more stringent Pedrick standard. Maple v. Gustafson, 151 Ill.
2d at 454, 603 N.E.2d at 512. And where, as here, the assessment
of credibility of witnesses and the determination regarding
conflicting evidence was decisive to the outcome, it cannot be said
that the inferences that might reasonably be drawn from the
evidence so overwhelmingly favor defendants that no contrary
verdict could ever stand. Maple v. Gustafson, 151 Ill. 2d at 454,
603 N.E.2d at 512. The fact that the circumstantial evidence did
not exclude the possibility that decedent fell on debris in the
road near the accident scene or that decedent fell because he was
attempting to grab hold of the truck in an effort to hitch a ride
does not alter this outcome. McCullough, 254 Ill. App. 3d at 949,
627 N.E.2d at 208; Consolino, 127 Ill. App. 3d at 33, 468 N.E.2d at
424. Accordingly, we affirm the trial court's denial of
defendants' motion for a judgment notwithstanding the verdict.
 Because we find any possible error in the closing argument of
plaintiff's attorney was cured by defendants' objection and the
trial court's instruction to disregard, we reverse the trial
court's grant of defendants' motion for a new trial. Because we 
find plaintiff proved the element of proximate cause, we affirm the
trial court's denial of defendants' motion for a judgment
notwithstanding the verdict. In light of the foregoing, and
because we find it was not against the manifest weight of the
evidence, we reinstate the jury verdict. 
 Finally, both plaintiffs and defendants raised procedural and
evidentiary issues to be addressed by this court only in the event
the order for a new trial was affirmed. Because we have reversed
the trial court's order for a new trial and reinstated the jury
verdict, we need not address the issues so raised.
 Affirmed in part; reversed in part and jury verdict
reinstated.
 CAHILL, J., and THEIS, J., concur.