2020 IL App (1st) 192460-U
Order filed: June 19, 2020

FIRST DISTRICT
FIFTH DIVISION

No. 1-19-2460

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| RAUL SALINAS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 2018 L 3633 |
| | ) | |
| AMAZON LOGISTICS, INC., | ) | |
| AMAZON.COM SERVICES, INC., and | ) | |
| DOE AMAZON DELIVERY DRIVER, | ) | Honorable |
| | ) | Joan E. Powell, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Hoffman and Justice Delort concurred in the judgment.

**ORDER**

¶ 1　　*Held:* We affirmed the grant of a directed verdict for Amazon on counts 2, 3, and 9 of plaintiff's second amended complaint for *respondeat superior*, direct negligence, and spoliation of evidence, finding that there was insufficient evidence to send the case to the jury.

¶ 2　　Plaintiff, Raul Salinas, filed an action against defendants, Amazon Logistics, Inc., Amazon.Com Services, Inc., and Doe Amazon Delivery Driver (collectively Amazon) to recover for injuries arising out of a hit-and-run collision. The trial court directed a verdict for Amazon on

all counts. Plaintiff appeals the directed verdict for Amazon on count 2 (*respondeat superior*), count 3 (direct negligence) and count 9 (spoliation of evidence). We affirm.[1]

¶ 3     Plaintiff filed a second amended complaint alleging that at about 7:45 p.m. on December 8, 2017, an Amazon delivery driver sped through a stop sign without stopping and struck him while he was walking his dog west at the intersection of 24th Street and Leavitt Street (24th and Leavitt). The Amazon delivery driver drove away without checking on plaintiff or calling for assistance.

¶ 4     In count 2 for *respondeat superior*, plaintiff alleged that the Amazon delivery driver was performing work in the scope of his employment for Amazon, or was otherwise controlled by Amazon, when he negligently struck plaintiff. In count 3 for direct negligence, plaintiff alleged in pertinent part that Amazon acted negligently by permitting, encouraging, and/or designing driving routes through residential streets and school zones when more appropriate non-residential routes were available. In count 9 for spoliation of evidence, plaintiff alleged that Amazon improperly failed to preserve a surveillance video from its distribution center that potentially could have identified the driver and delivery truck that struck and injured him.

¶ 5     At trial, a Chicago police video of the collision was shown. The video depicts an unmarked, white van driving south on Leavitt and striking plaintiff at 7:49 p.m. on December 8, 2017, at the intersection of 24th and Leavitt. The video does not reveal the driver's face or the van's license plate.

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

¶ 6    Plaintiff testified that he was 77 years old at the time of trial. At about 7:49 p.m. on December 8, 2017, plaintiff was walking his dog west on 24th Street. When plaintiff arrived at the southeast corner of 24th and Leavitt, he stopped at the four-way intersection and saw a white van "far away" near an alley north of the intersection. Plaintiff then proceeded into the crosswalk, where the van struck him, causing him to lose consciousness. When he awoke, he was still lying in the street and his son Stephen ran over to him. Plaintiff told Stephen that a white "Amazon van" had hit him.

¶ 7    Amazon opened a distribution center, known as DCH1, at 2801 South Western Avenue in Chicago three years prior to the accident. DCH1 is four blocks south of the collision location. Plaintiff testified that ever since DCH1's opening, he had seen Amazon's white vans go down Leavitt "all the time." Plaintiff viewed the police video of his collision and testified to his belief that the white van that struck him was an "Amazon truck."

¶ 8    On cross-examination, plaintiff testified that he did not see any Amazon markings on the van, nor did he see the driver of the van or where the van went after it hit him.

¶ 9    Stephen Salinas testified that he lived with plaintiff on the second floor of 2144 W. 24th Street. On the evening of December 8, 2017, a neighbor came to the house and told Stephen that plaintiff had been struck by a vehicle at the street corner. Stephen ran to 24th and Leavitt, where he saw plaintiff about three and a half car lengths from the crosswalk, with blood on his fingers and face. Stephen asked plaintiff what had happened, and plaintiff said that he had been struck by a white truck belonging to Amazon.

¶ 10    After emergency personnel arrived and took plaintiff to the hospital, Stephen went to DCH1 and told two workers outside the facility that an Amazon driver had struck plaintiff and left him for dead. Stephen eventually told an Amazon manager, Kevin Barbosa, about the collision,

and asked Barbosa to check the vehicles inside the facility for any sign of damage on them. However, Barbosa did not inspect any of the vans while Stephen was there. Stephen left to go to the hospital.

¶ 11    Stephen testified that he had lived in the neighborhood for over 20 years and was familiar with the collision intersection and traffic in the area. DCH1 opened in 2015 or 2016. Prior to its opening, Stephen had not seen white delivery vans driving up and down Leavitt. After DCH1's opening, Stephen saw such unmarked, white delivery vans travelling north and south on Leavitt at all times, regularly every day. Stephen knew that the unmarked, white delivery vans were affiliated with Amazon, as they were identifiable by their make and model (Dodge and Nissan), and because their drivers wore reflective vests.

¶ 12    Stephen reviewed the police video of the collision and identified the white van as a Dodge with five lights on the top and grill. Stephen had "no doubt" that the van was affiliated with Amazon.

¶ 13    Stacey Salinas, plaintiff's adult son, testified that he has lived near 24th and Leavitt most of his life. Prior to the opening of DCH1, he never saw any white vans travelling up and down Leavitt. After DCH1 opened, he saw unmarked white trucks, mostly Dodges, on Leavitt "all the time." He associates the unmarked white vehicles with Amazon, as he sees them coming out of DCH1 "day in, day out." The drivers all wear reflective, fluorescent vests.

¶ 14    Victor Robledo testified that at the time of the collision, he was walking home from work and talking to a co-worker on his cell phone when he heard a loud noise. Robledo then saw a white, unmarked Dodge Ram ProMaster cargo van driving south down Leavitt toward him, in the direction of DCH1. The driver was an African-American man in his 20s to 30s and he was wearing

a reflective vest and looking in his driver's side mirror. Robledo then turned to his left and saw plaintiff lying in the street. Robledo ran to plaintiff and did not see where the van went.

¶ 15    Robledo testified that he was certain that the van that struck plaintiff was an Amazon delivery van. Robledo explained that DCH1 opened about two years before the collision, and that he is familiar with Amazon delivery vans because they are typically white cargo vans with taller roofs, including the Dodge ram model that struck plaintiff. Robledo also noted that Amazon drivers are usually in their 20s to 30s and typically wear reflective vests. Robledo regularly sees the Amazon vans driving up and down Leavitt because the entrance of the DCH1 parking lot is "through Leavitt." Robledo also testified to his belief that given the time of night when the collision occurred, the van was likely being driven by an Amazon driver returning to DCH1.

¶ 16    Robert Oikarinen testified that he was the site lead at DCH1 during the time of the collision, meaning that he was the highest ranking Amazon employee there. Oikarinen explained that the delivery drivers for Amazon were hired by third party independent contractors, known as delivery service providers, or DSPs. Amazon did not own the DSPs or employ the delivery drivers.

¶ 17    Seven to ten DSPs operated out of DCH1, each of which employed its own delivery drivers. The delivery drivers delivered packages not just for Amazon, but also for other customers, such as Dick's Sporting Goods. Oikarinen stated that the delivery drivers drove white, unmarked vans when delivering packages for Dick's Sporting Goods.

¶ 18    Oikarinen reviewed surveillance video of the delivery vehicles exiting and returning to DCH1 on the night of the collision for any signs of damage. Oikarinen did not see any such signs of damage to any of the delivery vehicles. Oikarinen did not save his notes of the video because "there was nothing of substance that provided any detail of any damages to the front of [any]

vehicle, any damages to the windshield, to the mirrors, to the bumpers, the fascia fenders on the wheel wells."

¶ 19    Oikarinen also viewed the police video of the collision and determined that the vehicle that struck plaintiff was a Dodge Ram ProMaster cargo van, based on its shape and the five flood lights above its windshield. Some DSP drivers use white Dodge Ram ProMaster cargo vans when making their deliveries for Amazon. However, some DSP drivers use other makes and models. DSP drivers are required to wear safety vests when entering DCH1, but they are not required to wear safety vests while on the road delivering packages for Amazon.

¶ 20    Bill Seliger, an Amazon delivery operations manager, testified that DCH1 was located near Blue Island Avenue, in a warehouse district. Seliger had observed unmarked, white vans in the area around DCH1 that were not affiliated with Amazon. Seliger testified:

> "Q. In December of 2017 did Amazon have exclusivity over [the] DSPs?
>
> A. No.
>
> Q. Did you understand what I mean by that?
>
> A. I believe you mean that did any of those DSPs contract with other companies to provide courier services.
>
> Q. Yes.
>
> A. And I know for a fact that several of those owners had specifically told me they provided services to other customers.
>
> Q. So they had contracts with Amazon at the time in December of '17, right?
>
> A. Yes.
>
> Q. And delivered packages for Amazon customers?
>
> A. Yes.

Q. And they also had contracts to your knowledge with other entities, non-Amazon related and delivered packages for them?

A. Yes."

¶ 21    Seliger testified that Amazon's driver training materials state that its drivers are always required to wear reflective vests. In practice, though, the drivers wore the reflective vests when inside DCH1, but not always when they were on the road delivering packages.

¶ 22    Dusko Tadic testified that he was a regional loss prevention manager for Amazon who was tasked with investigating plaintiff's collision. Tadic reviewed video from DCH1's surveillance cameras that showed delivery vehicles exiting and returning to DCH1 on the night of the collision. Tadic looked for any damage to any of the delivery vehicles that would indicate involvement in the collision. Tadic did not see any such damage to any of the delivery vehicles. The surveillance video was stored for 8 or 9 days and then automatically overwritten. Tadic took notes while reviewing the surveillance video but threw those notes away prior to trial because the scratch pad he had been using for taking the notes was filled up.

¶ 23    Tadic testified to an email he wrote during the course of the investigation, stating that he had identified one driver who was delivering packages for Amazon whose "road behavior" matches that of the person who struck plaintiff. Tadic explained that by "road behavior," he meant that "that person was delivering in the general area maybe about three or four hours before the accident that happened."

¶ 24    Tadic testified that DCH1 is located just south of Blue Island Avenue, in an area that he characterized as "commercial, industrial, lot of warehouses." There had been times during Tadic's employment when he had observed white, unmarked vans around DCH1 that were not affiliated with Amazon. Some of those white, unmarked vans were used by nearby food warehouses on Blue

Island Avenue, as well as by "a couple different glass businesses within that Blue Island corridor." Tadic testified that not all of the DSP drivers who make deliveries for Amazon wear reflective vests while on the road.

¶ 25    Kevin Barbosa testified that he was the lead shift manager at DCH1 on December 8, 2017. DCH1 shipped nearly 100,000 packages a day during the holiday season of December. DCH1's main parking lot was on Leavitt. Leavitt was a "popular corridor" for the DSP drivers to enter and exit DCH1.

¶ 26    Barbosa testified that Amazon required all vehicles delivering its packages to be plain, white trucks without any Amazon markings. Amazon also required its drivers to wear reflective vests at all times while delivering packages.

¶ 27    The trial court directed a verdict in favor of Amazon on all counts, stating:

> "The problem is that the evidence here without ascertaining the driver, without ascertaining that this was an Amazon van, I don't have a license plate, there—it's too speculative and it's—it's too much conjecture for me to let this go to the jury."

¶ 28    In effect, the trial court found that plaintiff failed to meet his burden of proving that the driver of the van that struck him was delivering packages for Amazon and thus acting within the scope of his agency for purposes of *respondeat superior*, and that plaintiff failed to show that Amazon proximately caused his injuries for purposes of negligence and spoliation of evidence.[2] Plaintiff subsequently filed a motion to reconsider, which the trial court denied.

---

[2] Regardless of the trial court's reasoning, we may affirm its judgment on any basis in the record. *Selby v. O'Dea*, 2020 IL App (1st) 181951, ¶ 94.

¶ 29    Plaintiff appeals the directed verdict on count 2 (*respondeat superior*), count 3 (direct negligence) and count 9 (spoliation).

¶ 30    A verdict may be directed only when all of the evidence, viewed in the light most favorable to the non-moving party, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967). We review *de novo* the trial court's grant of a directed verdict. *Private Bank v. Silver Cross Hospital and Medical Centers*, 2017 IL App (1st) 161863, ¶ 40.

¶ 31    A directed verdict is rightfully granted if the plaintiff in a civil case fails to meet the burden of production regarding each element of his claim; proof that relies upon mere conjecture or speculation is insufficient. *Id.* ¶ 42. Plaintiff meets his burden of production with regard to a given element of proof when he presents evidence which, when viewed most favorably to his position, would allow a reasonable trier of fact to conclude the element to be proven. *Id.* However, even if plaintiff produces some evidence of a fact, "a motion for a directed verdict may still be granted because some evidence of a fact that may seem substantial when viewed alone does not always retain such significance when viewed in the context of all of the evidence." *Id.*

¶ 32    Where plaintiff is using circumstantial evidence to meet his burden of production, such evidence must justify an inference of probability, not mere possibility. *Van Steemburg v. General Aviation, Inc.*, 243 Ill. App. 3d 299, 322-23 (1993). "[W]here the proven facts demonstrate that the nonexistence of the fact to be inferred appears to be just as probable as its existence, then the conclusion that exists is a matter of speculation, surmise, and conjecture, and the trier of fact cannot be permitted to make that inference." *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 473 (2010).

¶ 33    First, we address the trial court's order directing a verdict for Amazon on count 2 for *respondeat superior* based on plaintiff's failure to show that the driver of the van was acting within the scope of his agency with Amazon at the time of the collision. The doctrine of *respondeat superior* allows an injured party to hold a principal vicariously liable for the conduct of his agent. *Oliveira-Brooks v. Re/Max International, Inc.*, 372 Ill. App. 3d 127, 134 (2007). To prove *respondeat superior*, plaintiff must show: "(1) a principal/agent, master/servant, or employer/employee relationship existed; (2) the principal controlled or had the right to control the conduct of the alleged employee or agent; and (3) the alleged conduct of the agent or employee fell within the scope of the agency or employment." *Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 18. "The burden of proving the existence of an agency relationship and the scope of authority is on the party seeking to charge the alleged principal." *Anderson v. Boy Scouts of America, Inc.*, 226 Ill. App. 3d 440, 444 (1992).

¶ 34    Plaintiff points to the following circumstantial evidence that the driver of the van that struck him *may* have been acting in the scope of his agency with Amazon at the time of the collision, specifically:  that he was wearing a reflective vest; that the collision occurred four blocks north of DCH1 during the busy holiday season; that the van was traveling south on Leavitt in the direction of the DCH1 parking lot at the time of the collision; and that the van was an unmarked, white Dodge Ram ProMaster cargo van typically driven by DSP drivers who delivered packages for Amazon. Based on this circumstantial evidence, plaintiff, his son Stephen, and Robledo opined that the driver was delivering packages for Amazon at the time of the collision and, thus, was acting within the scope of his agency.

¶ 35    Plaintiff also points to Amazon's automatic overwriting of the surveillance video, and to Tadic's email identifying a driver delivering packages for Amazon as having exhibited similar

"road behavior" as the driver who hit plaintiff, as further circumstantial evidence that the driver of the van was acting within the scope of his agency with Amazon at the time of the collision.

¶ 36    However, there was contrary evidence. Specifically, Oikarinen testified that the delivery drivers were employed by independent, third-party DSPs, not by Amazon, and that they delivered packages not just for Amazon, but also for other customers, such as Dick's Sporting Goods. Oikarinen stated that when delivering packages for Dick's Sporting Goods, the DSP drivers drove unmarked, white vans such as the one that struck plaintiff. Seliger similarly testified that in December 2017, when the collision occurred, the DSPs who contracted with Amazon to deliver its packages also had contracts with non-Amazon entities and delivered packages for them as well. Seliger noted that DCH1 was located near a warehouse district and that he had observed unmarked, white vans in the area around DCH1 that were not affiliated with Amazon. Tadic also testified to DCH1's location in a commercial and warehouse district, and that he had observed unmarked, white vans near DCH1 that were used not by Amazon, but by nearby food warehouses and glass businesses.

¶ 37    Tadic further explained that the driver with similar "road behavior" to the driver who hit plaintiff had actually been delivering packages for Amazon in the general area of the collision *three or four hours before* plaintiff was struck. Tadic and Oikarinen testified that their review of the surveillance video revealed that no van exiting and returning to DCH1 on the night of the collision exhibited signs of damage that would indicate its involvement.

¶ 38    Even when all the evidence is viewed in the light most favorable to plaintiff (*Pedrick*, 37 Ill. 2d at 510), the nonexistence of the fact to be inferred here, that the driver of the unmarked white van was delivering packages for Amazon at the time of the collision, appears to be just as probable as its existence. The conclusion that exists is therefore a matter of speculation (*Keating*,

401 Ill. App. 3d at 473), which plaintiff may not rely upon to meet his burden of production. *Private Bank*, 2017 IL App (1st) 161863, ¶ 40. As plaintiff failed to meet his burden of production, with respect to *respondeat superior*, by showing that the driver of the van was delivering packages for Amazon and thus acting within the scope of his agency at the time of the collision, we affirm the trial court's order directing a verdict for Amazon on count 2.

¶ 39     Next, we address the directed verdict in favor of Amazon on count 3, for direct negligence in its design of delivery routes, based on plaintiff's failure to show proximate cause.

¶ 40     A negligence action requires plaintiff to prove that Amazon owed him a duty, and that Amazon breached its duty, proximately causing his injury. *Wojtowicz v. Cervantes*, 284 Ill. App. 3d 524, 531 (1996). Proximate cause consists of both cause in fact and legal cause. *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 257-58 (1999). The defendant's act or omission is a cause in fact if it was a material element and substantial factor in bringing about the injury. *Id.* at 258. The defendant's act is a legal cause if the injury is of a type a reasonable person would see as likely to result from his conduct. *Id.*

¶ 41     Cause in fact cannot be predicated on surmise or conjecture as to the cause of injury; instead, cause in fact is shown when there is a reasonable certainty that defendant's actions caused plaintiff's injuries. *Wojtowicz*, 284 Ill. App. 3d at 532. Reasonable certainty may be established by inference from circumstantial evidence, which must justify an inference of probability, not mere possibility. *Id.*

¶ 42     For all the reasons discussed earlier in this order, even when viewed in the light most favorable to plaintiff (*Pedrick*, 37 Ill. 2d at 510), the circumstantial evidence does not justify an inference of probability that the driver of the unmarked white van was delivering packages for Amazon at the time of the collision. Plaintiff has thus failed to show a reasonable certainty that

Amazon's alleged negligence in designing the delivery routes was the cause in fact of his injuries. Accordingly, we affirm the trial court's order directing a verdict for Amazon on count 3.

¶ 43    Next, we address the directed verdict for Amazon on count 9 for spoliation of evidence in connection with Amazon's automatic overwriting of the surveillance video that showed delivery vehicles exiting and returning to DCH1 on the night of the collision. Spoliation of evidence is a form of negligence. *Martin v. Keeley & Sons, Inc.*, 2012 IL 113270, ¶ 26. Plaintiff must prove that: (1) Amazon owed him a duty to preserve the evidence; (2) Amazon breached that duty by losing or destroying the evidence; (3) the loss or destruction of the evidence was the proximate cause of plaintiff's inability to prove an underlying lawsuit; and (4) as a result, plaintiff suffered actual damages. *Id.*

¶ 44    On appeal, the parties do not dispute that Amazon owed plaintiff a duty to preserve the surveillance video and breached that duty by allowing it to be automatically overwritten. The dispute centers on whether the trial court correctly found that the automatic overwriting of the surveillance video did not proximately cause plaintiff to be unable to prove his underlying lawsuit against Amazon. To establish proximate cause, plaintiff must show that he had a reasonable probability of succeeding in his underlying suit had Amazon not automatically overwritten the surveillance video. *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, n.2 (1995).

¶ 45    Tadic and Oikarinen testified that they had separately examined the surveillance video prior to its being automatically overwritten, and that the video depicted no damage to any of the delivery vehicles exiting and returning to DCH1 on the night of the collision that would have indicated an involvement in the collision. No contrary testimony regarding the video's depiction was presented and thus Tadic's and Oikarinen's testimony regarding the content of the video was the only evidence before the trial court relevant to its determination regarding whether plaintiff

had a reasonable probability of succeeding in his underlying suit had the surveillance video not been overwritten. Based on Tadic's and Oikarinen's testimony, even if the surveillance video had been preserved and presented to the jury, there is no reasonable probability that it would have made any difference to the outcome of the case. Therefore, even when viewing all the evidence in the light most favorable to plaintiff, we cannot say that the overwriting of the surveillance video proximately caused plaintiff to be unable to prove his underlying lawsuit against Amazon. Accordingly, we affirm the trial court's order granting a directed verdict for Amazon on count 9 for spoliation of evidence.

¶ 46    Plaintiff argues, though, that in reviewing Amazon's motion for a directed verdict on count 9, the trial court erred by considering Tadic's and Oikarinen's testimony about the content of the surveillance video. Plaintiff contends that instead, the court should have barred Tadic and Oikarinen from testifying about the content of the surveillance video as a sanction for Amazon's allowing the video to be overwritten.

¶ 47    Plaintiff elicited the testimony from Tadic and Oikarinen regarding the contents of the surveillance video. Plaintiff cannot complain of an error that he either induced the court to make or to which he consented. *In re Marriage of Reidy*, 2018 IL App (1st) 170054, ¶ 29.

¶ 48    Next, plaintiff argues that the verdicts would not have been directed had the trial court not erred by quashing the Rule 237(b) notice to Amazon to produce its in-house counsel, Lauren Rothenberg, to testify at trial. Supreme Court Rule 237(b) (eff. July 1, 2005) provides that "[t]he appearance at the trial or other evidentiary hearing of a party *** may be required by serving the party with a notice designating the person who is required to appear." Compelling the appearance of a party at trial pursuant to Rule 237(b) is a matter of the court's discretion and is reviewed for an abuse thereof. *Pros Corporate Management Services, Inc. v. Ashley S. Rose, Ltd.*, 228 Ill. App.

3d 573, 581 (1992); *Pacemaker Food Stores, Inc. v. Seventh Mont Corp.*, 117 Ill. App. 3d 636, 648 (1983).

¶ 49 In the present case, Rothenberg had no direct knowledge of the collision or investigation; her role was limited to supervising the litigation, including executing Amazon's original discovery responses. Plaintiff wanted Rothenberg to appear at trial to testify about the overwritten surveillance video that was inquired of during discovery. The court quashed the Rule 237(b) notice on Rothenberg, noting that there were other witnesses, namely Tadic and Oikarinen, with first-hand knowledge of the video who were available to testify. We find no abuse of discretion.

¶ 50 As a result of our disposition of this case, we need not address the remaining arguments on appeal.

¶ 51 For all the foregoing reasons, we affirm the grant of a directed verdict for Amazon on counts 2, 3, and 9 of plaintiff's second amended complaint.

¶ 52 Affirmed.